UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | S1 No. 15-cr-00155 (RNC) |
| ROSS SHAPIRO, | : | |
| MICHAEL GRAMINS and | : | July 8, 2016 |
| TYLER PETERS | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE
TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING
THE DEFENDANTS' COMPENSATION**

Defendants Ross Shapiro, Michael Gramins, and Tyler Peters respectfully submit this memorandum of law in support of their motion *in limine* to preclude the government from offering any evidence at trial relating to the defendants' compensation at Nomura Securities International, Inc. ("Nomura") or at any financial institution at which they worked prior to Nomura. This would include evidence regarding the amount of base salary, non-discretionary bonuses, or discretionary bonuses received by the defendants. Such evidence is irrelevant to the allegedly unlawful conduct described in the Superseding Indictment and is highly likely to cause unfair prejudice by inflaming the jury. Accordingly, the government should be precluded from introducing this evidence at trial pursuant to Rules 401 and 403 of the Federal Rules of Evidence.

Defendants also seek to preclude the government from offering any evidence or arguing or insinuating at trial that the profits earned by Nomura on individual trades of residential mortgage-backed securities ("RMBS") were actually earned *by the defendants*, "went into their

pockets," or similar characterizations.  It is indisputable that the profits associated with the trades referenced in the Superseding Indictment were retained by Nomura and did not flow directly to the defendants.  Thus, any reference or insinuation by the government or its witnesses that these profits were equivalent to the *defendants' profits* is untrue, misleading, and prejudicial, and should also be excluded pursuant to Rules 401 and 403.

## ARGUMENT

The Superseding Indictment alleges that, while working at Nomura, the defendants (1) misrepresented to certain purchasers of RMBS the price that Nomura had paid for the RMBS, (2) misrepresented to certain sellers of RMBS the price that Nomura anticipated that it could resell the RMBS, and (3) misrepresented to certain purchasers of RMBS that Nomura was trying to sell RMBS owned by a third party, when instead the RMBS were owned by Nomura.  Superseding Indictment ("Ind.") ¶ 35(a)-(b).  Notably, the Superseding Indictment does not allege a direct correlation between any additional profits earned by Nomura on the trades referenced in the Superseding Indictment (the "Charged Trades") and the compensation earned by the defendants.  Nor could it.  In fact, the Superseding Indictment states several times that the defendants' alleged misrepresentations created additional profits *for Nomura*, not for the defendants themselves.  *See, e.g.*, Superseding Ind. ¶ 33(a)(i) (alleging defendants "induce[d] the victim customers to pay a higher overall price, thereby ***providing Nomura*** with an extra and unearned profit"); ¶ 33(a)(ii) (alleging defendants "induce[d] the victim-customer to sell the RMBS bond at a price lower than they otherwise would achieve, thereby ***providing Nomura*** with an extra and unearned profit"); ¶ 33(c)(i) (alleging defendants "informed [other traders] that they could have made more profit ***for Nomura*** by lying to Nomura's customers"); Count Two (alleging misrepresentation that

2

"***Nomura would . . . only make*** eight ticks . . . when, in truth, ***Nomura made*** 20 ticks on the sale") (emphasis added).

Based upon the government's proposed exhibit list, however, as well as arguments made by the government at trial in *Litvak I*, we anticipate the government will seek to introduce evidence of defendants' compensation while they worked at Nomura. The government has included the personnel files for each of the three defendants, which include documents detailing the amount of their annual compensation. The government has also included multiple internal Nomura charts that lay out the total compensation, including salary and bonuses, received annually by each member of the RMBS desk at Nomura. In addition, the government introduced evidence and testimony regarding the defendants' annual compensation to the grand jury. This is a textbook example of evidence that is both irrelevant and highly prejudicial and which should, therefore, be excluded.

"Relevancy is a threshold inquiry," and irrelevant evidence is inadmissible. *Dowling v. United States*, 493 U.S. 342, 351 n.3 (1990). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Rule 401. Even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Rule 403. "Unfair prejudice" in the context of Rule 403 arises from evidence that may "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *United States v. Nachamie*, 101 F. Supp. 2d 134, 141 (S.D.N.Y. 2000) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)).

To introduce evidence of defendants' compensation, the government must link defendants' total compensation to the allegedly unlawful profits associated with the trades at

3

issue in the Superseding Indictment. *See United States v. Ferguson*, 2007 WL 4240782, at *1 (D. Conn. Nov. 30, 2007) (excluding evidence of compensation that was not linked to allegedly unlawful conduct and admitting only that component of compensation with a direct causal link to scheme). That required connection is absent here.

As demonstrated by their personnel files, the defendants received base salaries for each year while employed at Nomura. These salaries were predetermined at the beginning of each fiscal year and were not affected by the profitability of any trades executed by the defendants. The balance of defendants' compensation was paid via bonuses. For certain years, these bonuses were negotiated and set forth in writing in advance of the fiscal year. *See* NSISEC00056870, NSISEC00056870 (compensation agreements setting Mr. Shapiro's minimum compensation for 2009 and 2010 fiscal years); NSISEC00056729; NSISEC00056739 (compensation agreements setting Mr. Gramins's minimum compensation for 2009 and 2010 fiscal years); NSISEC00056821 (compensation agreement setting Mr. Peters's minimum compensation for 2009 fiscal year).[1] In years when defendants' bonuses were not previously negotiated, they were entirely discretionary and payable at the sole and absolute discretion of Nomura. The discretionary nature of Nomura's bonus determination demonstrates that this compensation was not tied to any particular trades, let alone the Charged Trades, and renders the defendants' bonus awards irrelevant to the charged conduct.

Moreover, even if the government wished to somehow connect defendants' compensation to the profitability of the Charged Trades, the only way it could do so would be through the

---

[1] In keeping with the confidentiality and prejudice concerns described in this memorandum, we have not attached as exhibits the personnel files and other documents cited in this memorandum that detail defendants' compensation. Should the Court wish to review these documents, we respectfully request that they be reviewed *in camera* or that we be permitted to file them under seal.

4

introduction of evidence or testimony regarding the method by which their compensation was actually calculated.  The government has not provided any indication that it will offer such evidence or testimony.  Although Nomura has produced hundreds of thousands of documents to the government as part of its investigation of this matter, the government's proposed exhibit list does not include any document that illustrates the method Nomura used to determine the amount of the discretionary portion of defendants' compensation.  Nor has the government disclosed any witnesses from Nomura who played any role in determining the amount of defendants' compensation.  In *Litvak*, the government offered a single witness with direct knowledge of the method used to determine Mr. Litvak's discretionary compensation – his supervisor.  Here, in contrast, not a single witness disclosed by the government had any supervisory authority over defendants.  Thus, the government cannot establish a link between the Charged Trades and defendants' compensation, a pre-requisite to the introduction of this evidence at trial.

In addition, the Superseding Indictment relates to only thirteen trades executed by the Nomura RMBS desk, and the allegedly unlawful profits at issue in the Superseding Indictment comprise only a fraction of a percent of the overall business generated by the RMBS desk at Nomura during the years covered by the Superseding Indictment.  Even including any additional trades identified in the government's proposed trial exhibits, the amount at issue is an extremely small percentage of Nomura's overall RMBS business.  During the fiscal years of 2011 through 2014, the RMBS desk, largely through the appreciation in value of its own inventory of RMBS, generated several hundred million dollars in net revenue for the benefit of Nomura.

Given the relative insignificance of the number and profitability of Charged Trades compared to Nomura's RMBS business as a whole, allowing the jury to hear about the defendants' total compensation or discretionary bonuses will create confusion and unfair

prejudice.  *See Ferguson*, 2007 WL 4240782, at *1 (evidence of salary and bonuses was "irrelevant to the charges" of stock manipulation because there was no direct link between salary and bonuses and stock prices); *see also Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, 2009 WL 3111766, at *6-7 (S.D.N.Y. Sept. 28, 2009) (granting defendants' motion *in limine* to exclude information relating to defendants' compensation, other than the method of compensation, because even if relevant, any limited probative value of this information is outweighed by its potential to bias the jury under Rule 403); *L–3 Commc'ns Corp. v. OSI Sys., Inc.*, 2006 WL 988143, at *6 (S.D.N.Y. Apr. 13, 2006) (granting defendant's motion *in limine* to exclude evidence of its witness's wealth and lifestyle because the information was "clearly irrelevant," and its inclusion would be unfairly prejudicial under Rule 403); *see also United States v. Stahl*, 616 F.2d 30, 31-33 (2d Cir. 1980) (finding prosecutor had "impermissibly equate[d] success, affluence and a single minded occupation with one's business affairs with greed and corruption," and made "a persistent appeal to class prejudice" warranting reversal of defendant's conviction of conspiring and aiding and abetting the bribery of a government official "[b]ecause such appeals are improper and have no place in the court room").  Nor will evidence of the defendants' compensation assist the jury in evaluating the allegations in the Superseding Indictment.  In the absence of any attempt to link defendants' compensation with the allegedly unlawful gains, evidence of defendants' compensation is not relevant or probative, but highly prejudicial.

For similar reasons, the government should also be precluded from offering any evidence or insinuating at trial that the profits earned by Nomura on individual RMBS trades were actually the *defendants' profits*.  It is uncontroverted that this was not the case.  However, at the trial of Jesse Litvak – a former RMBS trader at Jefferies & Co. who was charged for securities fraud

based upon similar conduct to the conduct of defendants' at issue in this case – the government, in both its opening and closing statements, referred to proceeds from the trades at issue in that case as money that Mr. Litvak "pocketed" or "his profits." (Tr. 86:13–15; 98:6–7; 2362:21–2363:11; 2400:20–21). These incorrect and unsubstantiated statements by the government or its witnesses are highly prejudicial and misleading, as they insinuate a motive for the allegedly unlawful conduct of defendants that simply did not exist. They should be excluded pursuant to Rules 401 and 403.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant their motion *in limine* to preclude the government from introducing evidence concerning defendants' compensation or that the proceeds earned by Nomura on the Charges Trades, or any individual RMBS trade, were actually profits earned by the defendants.

Respectfully submitted,

GREENBERG TRAURIG LLP

By: /s/ Marc L. Mukasey
    Marc L. Mukasey (PHV07694)
    200 Park Avenue
    New York, NY 10166
    Telephone: (212) 801-9200
    Facsimile: (212) 801-6400
    *Attorneys for Michael Gramins*

PETRILLO KLEIN & BOXER LLP

By: /s/ Guy Petrillo
    Guy Petrillo (CT19924)
    655 Third Avenue, 22nd Floor
    New York, New York 10017

        Telephone: (212) 370-0330
        Facsimile: (212) 370-0391
        *Attorneys for Ross Shapiro*

        ALSTON & BIRD LLP

By:  <u>/s/ Brett D. Jaffe</u>
        Brett D. Jaffe (PHV07701)
        90 Park Avenue
        15th Floor
        New York, NY 10016-1387
        Telephone: (212) 210-9400
        Facsimile: (212) 210-9444
        *Attorneys for Tyler Peters*

**CERTIFICATION OF SERVICE**

      I hereby certify that on July 8, 2016, a copy of foregoing Motion *in Limine* to Exclude Evidence and Argument Regarding the Defendants' Compensation was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Dated:  New York, New York
          July 8, 2016

                                         /s/ Marc L. Mukasey
                                       Marc L. Mukasey (PHV07694)
                                       200 Park Avenue
                                       New York, NY 10166
                                       Telephone: (212) 801-9200
                                       Facsimile: (212) 801-6400
                                       Email: mukaseym@gtlaw.com