UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:15CR155 (RNC) |
| | : | |
| v. | : | |
| | : | |
| ROSS SHAPIRO, | : | July 25, 2016 |
| MICHAEL GRAMINS, and | : | |
| TYLER PETERS | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE EVIDENCE AND REFERENCES TO THE PPIP PROGRAM AND IDENTITIES OF PASSIVE INVESTORS IN THE FUNDS MANAGED BY THE COUNTERPARTY INSTITUTIONS**

The Government respectfully submits this Memorandum in Opposition to the defendants' Motion *in Limine* to Preclude Evidence and References to the PPIP Program and Identities of Passive Investors in the Funds Managed by the Counterparty Institutions (Dkt. 162). The defendants improperly seek to exclude evidence bearing on materiality, preclude the Government from providing context for the victims' actions and impede the Government from rebutting arguments the defendants make to the jury. Their motion should be denied.

**Discussion**

In their motion, the defendants seek to preclude the introduction of evidence regarding the identity of investors in the victim funds. They make two different arguments to support their motion. First, the defendants claim that the Court should exclude evidence of the Treasury Department's investment in the Public-Private Investment Partnership ("PPIP") Fund managed by Michael Canter, an employee of victim AllianceBernstein. Secondly, the defendants argue that the Government should be prohibited from introducing evidence of any investors in the victim-funds.

1

a. **The Management of PPIP Funds is Relevant to Materiality**

There is little doubt that the materiality of the defendants' lies will be a central point of contention at trial. The defendants have indicated to the Government and the Court that they intend to argue that the types of lies told by the defendants to their victims were not material to their victims' decision to buy or sell an RMBS or to the price at which the victims would buy or sell any RMBS.

One of the counterparties that was a victim of the defendants' fraud was AllianceBernstein and the PPIP Fund managed by its employee Michael Canter. As the defendants make clear, Canter was also a victim of Jesse Litvak in a similar scheme. When Canter discovered that Litvak was deceiving him about the purchase price of RMBS, he became upset and took steps that culminated in AllianceBernstein reporting Litvak's conduct to the Treasury Department.  Canter's actions directly reflect his assessment of the materiality of information provided to him by a broker-dealer about the purchase price of RMBS.

Although materiality is an objective standard based on the actions of a "reasonable investor," it is axiomatic that the Government is allowed to present evidence to juries about the assessment made by actual investors so that the jury can determine what it believes a "reasonable investor" would think about an allegedly misleading statement. *See United States v. Litvak*, 808 F.3d 160, 177 (2d Cir. 2015) (holding materiality is mixed question of law and fact for jury, bbbnoting that "several of [Litvak's] counterparties' representatives testified at trial that they considered the misrepresentations meaningful in the course of those transactions and that they or their employers were harmed by Litvak's misleading course of conduct.").  Canter's actions following the discovery of a fraud virtually identical to the fraud orchestrated in this case are

highly probative of his assessment of the materiality of misrepresented information concerning the purchase and sale price of RMBS, as in this case.

The Government must be allowed to presbent evidence of materiality. If the defendants plan to contest the materiality of their lies about the purchase price of RMBS, Canter must be allowed to testify about not only the importance of such information to him, but also what he did when presented with a situation where such information was false. This series of events is highly probative of the materiality of the information to Canter, but it only makes sense in the context of his role as a PPIP Fund manager.

The defendants attempt to artificially exclude the context of Canter's business with the defendants—that is, his involvement in a PPIP fund—by inaptly relying on the objective nature of the materiality standard. Def. Mem. at 6 ("There is no different standard of materiality in a securities fraud case based on whether the government is a passive investor in an investment fund that is allegedly subjected to securities fraud."). The Government does not quarrel with the notion that materiality is judged objectively by the impact of a misrepresentation on a "reasonable" investor. However, the defendants are wrong to conclude that consideration of a particular investor's circumstances necessarily interferes with such an objective inquiry. Rather, "as a practical matter, even the objective, reasonable person of ordinary prudence standard must be anchored in reality and connected to the material circumstances surrounding the victim or the intended victim of a scheme to defraud if it is to serve a useful function in guiding a jury's deliberations." *United States v. Gray*, 367 F.3d 1263, 1272 (11th Cir. 2004). How a reasonable investor acts is surely driven by the industry and regulatory framework in which it operates. As Canter made clear at the first *Litvak* trial—and will make clear at this trial—in managing a PPIP Fund, "there's a lot of rules, and there's consequences if you didn't follow the rules. And one of

3

those consequences could be that they basically fire us.  They take the -- the mandate away from us and hire some other firm to do the job." *Litvak I* Transcript 360:11-15.  One of those rules that Canter was required to follow was a "special best execution policy," that is to buy or sell a bond at the best price—a rule he unwittingly and unwillingly violated because of the defendants (and Litvak's) lies.  *Litvak I* Transcript 359:10.  While Canter's other investors would no doubt have expected best execution, a failure in the context of a PPIP Fund, with its mandatory reporting requirements and special oversight, had additional consequences.  A reasonable investor in Canter's position would clearly have to consider the impact on his business, including losing the significant investment from the Treasury Department, if he violated its rules.

      Finally, it is a misstatement of the holding in *Litvak* to suggest that just because the Second Circuit dismissed the PPIP-related false statement charges it also intended to eliminate PPIP as a factor in the case, particularly with regard to materiality.  Not only did the Second Circuit note that several investors (including Canter) testified that Litvak's misrepresentations were meaningful and that they were therefore harmed, the court went on to specifically call out the misrepresentations to PPIP Funds:  "In addition, the public interest is implicated by the involvement of the Treasury as a major investor in several of Litvak's counterparties in the transactions at issue. Thus, enforcement of Section 10(b) here is consistent with the Supreme Court's instruction to apply the statute flexibly [] and with the statute's purpose of remedying deceptive and manipulative conduct with the potential to harm the public interest or the interests of investors." *Litvak*, 808 F.3d at 177.

      **b.  The identity of victim-fund investors is relevant and admissible.**

      As the Second Circuit noted in *Litvak*, a court determines relevance under Rule 401 by assessing whether the evidence has a tendency to make any fact of consequence more or less

4

probable and that Rule 401 has a "very low standard." *Litvak* at 179-180. The victims in this case were funds that managed money on behalf of other entities and people. The victims had a fiduciary duty to protect their investors' money and put their investors' interests first. Such investors included pension funds, mutual funds, high-net worth individuals, and sovereign wealth funds. To protect their investors, victims screened broker-dealers, and chose which to trade with based on factors that included trust.

The foregoing facts regarding victims' investors are relevant because they tend to establish the context and certain elements of the scheme to defraud. The jury cannot determine the defendants' guilt in a vacuum, devoid of any context or information. To understand the evidence and weigh its significance, the jurors will have to learn about the RMBS market during the time in question; they must hear about who the victims were, what they were doing, and why. Without this information, the jurors will lack an accurate context to evaluate whether the defendants' misrepresentations were material and to draw inferences as to whether they had the requisite fraudulent intent.

The Hon. Janet C. Hall addressed this very issue during the proceedings in Jesse Litvak's retrial. Judge Hall found that "[t]he government's proposed evidence concerning the identity of investors in counterparty funds easily passes [the Second Circuit's relevance] bar." *United States v. Litvak,* 3:13-cr-00019-JCH, Dkt. 432 at 11. This type of testimony "provides relevant context for the Government's theory of Ltivak's 'scheme to defraud' … and, in particular, that this context has a tendency to make it more probable that the alleged misstatement were material to counterparties[.]" *Id.*

Moreover, the defendants will likely claim that their misrepresentations were made to "sophisticated counterparties" which were not really harmed by this conduct. In their present

motion alone, the defendants mentioned the sophistication of their victims four different occasions (e.g., "the counterparties are all sophisticated and highly successful investment firms"). Similarly, the defendants' two expert notices use the word "sophisticated" or "sophistication" a total of twelve times to describe the defendants' counterparties.  *See*, *e.g.*, June 27, 2016 Expert Notice at 5 ("Trades in the non-agency RMBS market are principal-to-principal trades.  They are arms-length transactions between sophisticated institutions whose economic interests are not aligned").  This is nothing short of a nullification argument – an argument that the lies told by Wall Street traders like the defendants are harmless because they only affect the interests of the economic elite who are all playing by the same rules.  This was an argument specifically made at the closing argument in Litvak's case. Trial Tr. 2442:2-5.  ("But in this big boy market, surely everyone on that witness stand … they know what the score is.") The Government needs to be allowed to lay the evidentiary basis to rebut this argument that the defendants here seem poised to make to the jury in this trial as well. Given the defendants' apparent trial strategy, laying such a groundwork is in no way prejudicial to the defendants.

        In short, the defendants seek an extreme remedy for a problem that doesn't exist.  Should the Court have any concern about unfair prejudice to any evidence related to victims' investors, it can correct any potential misconceptions with a jury instruction.  However, evidence of the identity of investors in the victim-funds is relevant to the case at hand and not unduly prejudicial.  It should be admitted.

**Conclusion**

WHEREFORE, the Government respectfully requests that the Court deny the Defendants' Motion to *in Limine* to Preclude Evidence and References to the PPIP Program and Identities of Passive Investors in the Funds Managed by the Counterparty Institutions.

Respectfully submitted,

DEIRDRE M. DALY
UNITED STATES ATTORNEY

_____
LIAM BRENNAN
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT27924

HEATHER CHERRY
ASSTANT UNITED STATES ATTORNEY

U.S. Attorney's Office
157 Church Street
New Haven, CT 06510
(203) 821-3835

## Certificate of Service

  I hereby certify that on July 25, 2016, a copy of the foregoing was filed on the Court's ECF electronic filing system from which counsel for Ross Shapiro, Michael Gramins, and Tyler Peters can receive a copy.

                    /s/
                  LIAM BRENNAN
                  ASSISTANT UNITED STATES ATTORNEY