UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:15CR155 (RNC) |
| | : | |
| v. | : | |
| | : | |
| ROSS SHAPIRO, | : | July 25, 2016 |
| MICHAEL GRAMINS, and | : | |
| TYLER PETERS | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION TO PRECLUDE EVIDENCE OF FINRA STUDY GUIDES**

The Government respectfully submits this Memorandum in Opposition to the Defendants' Motion to *in Limine* to Preclude Evidence of FINRA Study Guides (Dkt. 163). The defendants seek to improperly exclude circumstantial evidence from the trial record. Their objection is an objection to the evidence's weight. It has no bearing on the evidence's admissibility.

## Background

Two central issues in this trial will be whether the defendants had the requisite intent to defraud and whether his misrepresentations were material. Although formulated somewhat differently depending on the offense, both are elements of wire fraud and securities fraud. *See United States v. Pierce*, 224 F.3d 158, 165 (2d Cir. 2000) (to prove a scheme to defraud in wire fraud case, government must prove "(i) the existence of a scheme to defraud, (ii) the requisite scienter (or fraudulent intent) on the part of the defendant, and (iii) the materiality of the misrepresentations."); *United States v. Litvak*, 808 F.3d 160, 175, 179 (2d Cir. 2015) (holding that (1) "[a] misrepresentation is material under Section 10(b) of the Securities Exchange Act and Rule 10b-5 where there is a substantial likelihood that a reasonable investor would find the [] misrepresentation important in making an investment decision" and (2) unlike in wire or mail fraud, intent to harm is not a component of the scienter element of securities fraud) (citations

1

omitted).  Similarly, the *Litvak* court made clear that a defendant should be able to offer evidence of good faith, that is, "he held an honest belief that his conduct was not improper or unlawful." 808 F.3d at 190.

Here, the Government proposes to introduce evidence to establish the content of certain industry certification examinations, and the defendants' familiarity with those exams, as evidence that the defendants knew that their conduct was unlawful, to rebut any suggestion by the defendants that they acted in good faith, and to prove that the misrepresentations by the defendants were material.  As they concede in their motion, each of the three defendants passed Series 7 and 63 exams administered by the Financial Industry Regulatory Authority ("FINRA"). Doc 163-1 at 2. Gramins and Shapiro also passed the Series 24 exam administered by FINRA. *Id.* "The exams cover topics that include, among other things, the laws, rules and regulations regarding the sale of securities to investors." *Id.* The defendants correctly anticipate that the Government intends to argue that their experience with these exams is evidence that they were aware of the anti-fraud provisions of the securities fraud statute and other relevant regulations. More specifically, the Government intends to present evidence of the FINRA study guide materials related to fraudulent conduct and deception in the securities market, evidence that the defendants passed the relevant FINRA exams, and testimony of a FINRA representative concerning those topics.

The Government offers the study guides, first, because they are the best remaining evidence of the content of the exams that the defendants passed; FINRA no longer maintains the exams from the years the defendants were tested.  Two of the study guides, the 2007 Series 24 and the 1995 Series 7 guides, are essentially outlines of the material that was to be on the test; that is, they list but do not explain the various concepts that will be on the exams.  The 1995 Series 63 guide both lists the subject areas that will be covered by the test and provides some explanatory detail about each topic.  From all three guides, it can be inferred that the defendants' exams tested

2

knowledge of the Securities Exchange Act of 1934, including the "regulation of the use of manipulative and deceptive devices" and "fraud and misrepresentation" in the context of the regulation of brokers and dealers. *General Securities Principal Qualification Examination (Test Series 24) Study Guide*, Financial Industry Regulatory Authority (2007) ("2007 Series 24 Guide") at 38-39; *see also Content Outline for the General Securities Registered Representative Examination*, New York Stock Exchange, Inc. (1995) ("1995 Series 7 Guide") at 17 (Section 5.3.1.1, "The Securities Exchange Act of 1934 definition purposes applicability of antifraud provisions"); *Uniform Securities Agent State Law Examination Study Guide*, North American Securities Administrators Association, Inc. (1996) ("1996 Series 63 Guide") at 18-22 (Section IV, entitled "Fraudulent and Other Prohibited Business Practices").

Second, the Government also offers the guides as evidence in themselves that the defendants were aware that their conduct was unlawful. Even though there may not be a witness who will testify to seeing one of these study guides in a defendant's hands, a jury could reasonably infer that people interested in passing the exams would either look at the FINRA outlines themselves or work from test preparation material that is based on the outlines, where the outlines are issued by the testing agency and purport to describe the exams and the subjects that will be covered. *See* e.g., 1995 Series 7 Guide at 2 ("The Series 7 Content Outline has been designed to provide information for securities firms, training institutions that prepare candidates for the examination, and candidates for the examination who wish to structure their own course of study or supplement courses prepared by others. The outline contains a listing of the topics in the examination, the relative emphasis on the topic areas, model questions with answers, and a bibliography of basic study materials."). Indeed, it is hard to imagine that a student, particularly one who stands to make significant amounts of money from a job that require successful passage of the examinations, would choose not to review the study guide or its derivative.

**Discussion**

Despite the study guides' clear relevance, the defendants seek to preclude this evidence without any statutory or legal support. The defendants do not appear to attack the relevance of the exams or the subject matter of the study guides. Rather, the defendants simply argue that the Government cannot prove that the defendants read the guides, and therefore there is no foundation for their admission into evidence. The defendants' motion misses the mark because the Government may prove a fact by circumstantial evidence, and the study guides provide evidence of the defendants' intent.

a. **Circumstantial evidence is admissible in criminal cases**

The defendants' argument that the Government should be prevented from introducing the FINRA study guides "absent an evidentiary foundation that establishes that defendants reviewed said guides," Dkt. 163-1 at 3, is contrary to law.

As this Court has instructed, juries are entitled to consider both direct and circumstantial evidence. "Circumstantial evidence … is proof of a chain of circumstances from which [a jury] can infer or conclude that a fact exists even though it has not been proven directly." *United States v. Edward Thomas*, 3:14-CR-00031, Jury Instructions ("*Thomas* Instructions") at 31; *see also United States v. Dizdar*, 581 F.2d 1031, 1036 (2d Cir. 1978) (affirming charge that included: "Circumstantial evidence, on the other hand, is where one fact or a chain of facts gives rise to a reasonable inference of another fact. If one fact or group of facts on the basis of common sense and common experience leads you logically and reasonably to infer other facts, then this is circumstantial evidence.") "The law makes no distinction between the weight to be given direct evidence and the weight to be given circumstantial evidence." *Thomas* Instructions at 32. A "jury's verdict may be based entirely on circumstantial evidence," may be "inferred" from the evidence,

4

and, so long as the inference is reasonable, "it is the task of the jury, not the court, to choose among competing inferences." *United States v. Kim*, 435 F.3d 182, 184 (2d Cir. 2006) (citations omitted).

Because direct evidence of a person's mental state is almost never available to a jury, circumstantial evidence is commonly relied upon to establish intent. "The law, however, recognizes that the *mens rea* elements of knowledge and intent can often be proved through circumstantial evidence and the reasonable inferences drawn therefrom." *United States v. MacPherson*, 424 F.3d 183, 189 (2d Cir. 2005). "Since proof of scienter frequently depends on circumstantial evidence, a defendant's studied effort to avoid drawing conclusions from surrounding facts is probative of guilt." *United States v. Joyce*, 542 F.2d 158, 161 (2d Cir. 1976). Again, as this Court has stated, "careful and intelligent consideration of all the facts and circumstances shown by the evidence may enable [a jury] to infer with a reasonable degree of accuracy the extent of a person's knowledge." *Thomas* Instructions at 14.

While the defendants cite no cases in support of their novel position—namely, that the Government use of the study guides to establish intent requires *direct* evidence that the defendants read them—there are many cases that reaffirm the Government's ability to rely on inferences and circumstantial evidence. For example, in *MacPherson*, a currency structuring case, the court admitted into evidence a bank manager's testimony about filling out part of a cash transaction report ("CTR"). Although the manager could not remember whether Mrs. MacPherson was present when she filled out the CTR, the manager was allowed to testify that it was her uniform practice to fill out such reports directly across a desk from customers. *Macpherson*, 424 F.3d at 186, 193. "[T]he district court concluded that [the bank manager's] testimony could support a jury inference that MacPherson thereby acquired knowledge of the reporting requirement for cash transactions exceeding $10,000." *Id.* at 94. The Second Circuit relied on the admission of this evidence in finding evidence of Macpherson's knowledge.

In another case, the Second Circuit found that terrorist materials recovered from a defendant's apartment were admissible against a defendant as "circumstantial proof of a connection among the conspirators and their familiarity with bomb making and the use of explosives." *United States v. Salameh*, 152 F.3d 88, 111 (2d Cir. 1998). Indeed, the Second Circuit upheld their admission "against an alleged co-conspirator, without any discussion of whether the co-conspirator had read or seen the materials." *Id.* at 115. The Second Circuit has consistently held that evidence of knowledge can be proven through possession of documents important to show conspiratorial knowledge. *United States v. Friedman*, 300 F.3d 111, 126 (2d Cir. 2002). *See also United States v. Amen*, 831 F.2d 373, 379 (2d Cir. 1987) (receipt of *The Inmate Informational Handbook* gave notice that the defendant's phone calls would be taped); *United States v. Willoughby*, 860 F.2d 15, 20 (2d Cir. 1988) (sign outside telephone evidence of notice that calls would be monitored, as was receipt of form alerting prisoners to authority to monitor calls).

b. **The study guides are circumstantial evidence of the defendants' intent**

The Government offers the study guides as evidence of what was on the defendants' exams. As discussed above, FINRA does not have in its possession copies of the exams that the defendants passed more than ten years ago. It does, however, have the study guides which describe the topics for those exams and their relative emphases on those topics. The Government intends to prove intent and materiality in several ways at trial; as discussed above, one of those ways is certainly that the defendants, as traders registered with FINRA, were required to be familiar with the anti-fraud provisions of the securities laws. Even if the defendants *never read the study guides*, FINRA records at trial will show that they each passed the Series 7 and 63 exams, and that Gramins and Shapiro also passed the Series 24 exam. The study guides make clear that each exam covered the anti-fraud provisions of the securities law, and thus the defendants answered questions about those

provisions on their exams. Thus it is entirely reasonable for the Government to argue from those facts that the defendants were aware of the relevant regulations simply because they took and passed the exams.[1]

Moreover, the Government also intends to ask the jury to infer that the defendants reviewed the guides from several facts and inferences: that the guides were issued by FINRA or one of its predecessor exam-administering agencies; the defendants had every incentive to pass the exams; one overwhelmingly logical way to prepare for such an exam is to review what the test administrator says is going to be on the exam (i.e., via the guides); and, in fact, the defendants did pass the exams as described above. While defendants are free to argue that this set of facts augurs for a different conclusion, the Government's suggestion is far from speculative, and the jury is entitled to choose which conclusion they believe comports with the facts and common sense. *Kim*, 435 F.3d at 184.

*   *   *

The study guides at issue fall within the Second Circuit's definition of admissible circumstantial evidence, since they are part of a "chain of facts [that] gives rise to a reasonable inference of another fact." *Dizdar*, 581 F.2d at 1036. Accordingly, the Court should allow this relevant and probative evidence showing that the defendants were aware of the anti-fraud provisions of the securities fraud statute and securities regulations.

---

[1] As the defendants note in their motion, the court in *Litvak* admitted the study guides into evidence, despite no direct evidence that the defendant had read the study guides. Dkt. 163-1 at 3.

**Conclusion**

WHEREFORE, the Government respectfully requests that the Court deny the Defendants' Motion *in Limine* to Preclude Admission of FINRA Study Guides Absent Proper Foundation.

Respectfully submitted,

DEIRDRE M. DALY
ACTING UNITED STATES ATTORNEY

_____
LIAM BRENNAN
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT27924

HEATHER CHERRY
ASSTANT UNITED STATES ATTORNEY

U.S. Attorney's Office
157 Church Street
New Haven, CT 06510
(203) 821-3835

**Certificate of Service**

      I hereby certify that on July 25, 2016, a copy of the foregoing was filed on the Court's ECF electronic filing system from which counsel for Ross Shapiro, Michael Gramins, and Tyler Peters can receive a copy.

                                              /s/
                                    LIAM BRENNAN
                                    ASSISTANT UNITED STATES ATTORNEY