UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | S1 No. 15-cr-00155 (RNC) |
| ROSS SHAPIRO, | : | |
| MICHAEL GRAMINS and | : | July 25, 2016 |
| TYLER PETERS | : | |

**MEMORANDUM OF LAW IN OPPOSITION TO GOVERNMENT'S
MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING
THE ABSENCE OF CRIMINAL ACTIVITY IN UNCHARGED TRANSACTIONS**

Defendants Ross Shapiro, Michael Gramins, and Tyler Peters (collectively, "defendants") submit this memorandum of law in opposition to the government's motion *in limine* to exclude evidence and argument regarding the absence of criminal activity in uncharged transactions.

The government's motion to exclude evidence and argument suggesting the absence of criminal activity in uncharged transactions is based on the incorrect assumption that defendants intend to offer such evidence for the purpose of either showing the lack of alleged criminal activity in the charged transactions or proving their good character. Defendants have no such intention. Thus, none of the cases relied on by the government in its motion are on point, as they all concern a defendant's affirmative attempt to introduce evidence of so-called "good acts" to prove good character or the absence of criminal activity during the relevant period. If defendants introduce evidence regarding the thousands of other transactions effected by the RMBS trading desk at Nomura Securities International, Inc. ("Nomura") during the period covered by the

Superseding Indictment, it would be for the purpose of rebutting insinuations by the government regarding defendants' alleged *modus operandi* or financial incentives to commit fraud.

## ARGUMENT

The defense has the right to rebut any argument or insinuation by the government that trades effected by the Nomura RMBS desk, other than those charged in the Superseding Indictment or included in the government's exhibit disclosures (hereinafter referred to together as the "Charged Trades"), were tainted by criminal conduct. The defense will also seek to rebut any argument that the alleged misrepresentations in the Charged Trades were indicative of defendants' *modus operandi* in conducting business. If the government chooses to make such arguments, it would open the door to rebuttal evidence regarding the overwhelming majority of the RMBS activity that is not alleged by the government to be unlawful. *See United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 828 F. Supp. 2d 698, 707-08 (S.D.N.Y. 2011) (denying government's motion to exclude evidence of uncharged transactions because "such evidence may be relevant to 'cast doubt on the government's theory'" of intent) (quoting *United States v. Santos*, 201 F.3d 953, 962 (7th Cir. 2000)); *see also United States v. Balboa*, 2013 WL 6196606, at *3 (S.D.N.Y. Nov. 27, 2013) (evidence of defendant's past "good acts" is relevant where defendant is alleged to have always or continually committed "bad acts" or where evidence of "good acts" would undermine the underlying theory of the prosecution) (internal quotations omitted)).

The government has also indicated its intention to argue that defendants were motivated to commit fraud because their overall compensation was affected by the alleged illegal profits

that defendants earned for Nomura.[1]  Again, any attempt by the government to elicit such evidence would certainly permit the defense to present a holistic view of Nomura's RMBS business, which would necessarily require the defense to discuss, at least in general terms, the thousands of RMBS trades conducted by Nomura that were not among the Charged Trades, as well as Nomura's various methods of generating profits, such as through the acquisition, holding, and appreciation in value of RMBS in its own inventory.  In fact, the bulk of the profits earned by Nomura's RMBS desk came from the appreciation in value of RMBS that Nomura held for a significant period of time, *not* from the profits it earned on same-day RMBS trades.

The RMBS desk at Nomura consummated more than 17,000 RMBS transactions during the years covered by the Superseding Indictment.  The Charged Trades amount to less than a quarter of a percent of the RMBS desk's overall trading activity during that period.  During the relevant period in the Superseding Indictment, Nomura's RMBS desk generated hundreds of millions of dollars in net revenue, the overwhelming majority of which was earned through the appreciation in value of RMBS that Nomura held in its own inventory or through trades not alleged to be tainted by unlawful conduct.

Defendants do not seek to unnecessarily expand the scope of this case by introducing evidence about other so-called "good acts" or by creating a "trial within a trial."  Defendants have every right, however, to disabuse the jury of any false impression created by the government that the Charged Trades constitute the full extent, or even a significant portion, of

---

[1] Defendants have separately demonstrated in their Memorandum of Law in Support of Defendants' Motion in Limine Regarding Compensation, dated July 8, 2016 (ECF No. 161), why the compensation evidence the government intends to offer is irrelevant and unfairly prejudicial. Should the government offer, and the Court allow, the introduction of this motive evidence, the defense should be permitted to introduce rebuttal evidence to show that the overwhelming majority of defendants' conduct—which generated enormous profits for Nomura—is not alleged by the government to be unlawful.

the trades effected by the Nomura RMBS desk during the relevant time period.  Fundamental fairness dictates that the defense should be permitted to rebut the government's theory by showing that the Charged Trades were a miniscule number of trades in a universe of thousands.

Consequently, if the government argues, as it has indicated it will do, that defendants' overall compensation was linked to their alleged misconduct and is thus probative of their motive, defendants should be permitted to prove otherwise through evidence that will show that defendants were not motivated to make misrepresentations in connection with RMBS trades for personal financial gain.  As discussed above, the overwhelming majority of profits earned by the RMBS desk were not alleged to have been tainted by any unlawful conduct.  As a result, defendants' regular lawful conduct—the source of the vast majority of profits earned by the RMBS desk—undermines any such assertion and should be admissible in rebuttal.  *See Balboa*, 2013 WL 6196606, at *3; *Damti*, 109 F. App'x at 456; *Rubin/Chambers*, 828 F. Supp. 2d at 708.

*Balboa* is instructive.  There, the government alleged that the defendant sought to personally profit from a scheme to artificially inflate the value of warrants by having co-conspirators provide purportedly independent inflated valuations for the warrants.  *Balboa*, 2013 WL 6196606, at *12.  The court permitted the defendant to introduce evidence at trial concerning his good-faith price "markdowns" of other securities within the same fund, subject to a relevancy showing.  *Id.* at *3.  It reasoned that such evidence could negate the personal profit theory advanced by the government.  *Id.*  Specifically, the court found that "markdown" evidence could cause a jury to question the government's theory that defendant's pay, which was based in part on the fund's performance, incentivized him to engage in fraud.  *Id.*  The same is true here.  The defense should be permitted to rebut the government's theory of a personal financial motive by showing that the RMBS desk generated the bulk of its profits by holding

RMBS in its inventory for investment, and by showing that the Charged Trades were a miniscule portion of the thousands of trades effected by the RMBS desk during the relevant period.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court deny the government's motion *in limine* to exclude evidence and argument regarding the absence of criminal activity in uncharged transactions.

Respectfully submitted,

GREENBERG TRAURIG LLP

By: /s/ Marc L. Mukasey
Marc L. Mukasey (PHV07694)
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
*Attorneys for Michael Gramins*

PETRILLO KLEIN & BOXER LLP

By: /s/ Guy Petrillo
Guy Petrillo (CT19924)
655 Third Avenue, 22nd Floor
New York, New York 10017
Telephone: (212) 370-0330
Facsimile: (212) 370-0391
*Attorneys for Ross Shapiro*

ALSTON & BIRD LLP

By: /s/ Brett D. Jaffe
Brett D. Jaffe (PHV07701)
90 Park Avenue
15th Floor
New York, NY 10016-1387
Telephone: (212) 210-9400

Facsimile: (212) 210-9444
*Attorneys for Tyler Peters*

## **CERTIFICATION OF SERVICE**

I hereby certify that on July 25, 2016, a copy of foregoing Memorandum of Law in Opposition to the Government's Motion *in Limine* to Exclude Evidence and Argument Regarding the Absence of Criminal Activity in Uncharged Transactions was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Dated: New York, New York
       July 25, 2016

        /s/ Marc L. Mukasey
Marc L. Mukasey (PHV07694)
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: mukaseym@gtlaw.com