UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                :
UNITED STATES OF AMERICA                        :
                                                :
                                                :
                                                :
              v.                                :   No. 15-cr-00155 (RNC)
                                                :
ROSS SHAPIRO,                                   :
MICHAEL GRAMINS and                             :
TYLER PETERS                                    :   AUGUST 5, 2016
                                                :
                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THEIR MOTION *IN LIMINE* TO PRECLUDE EVIDENCE AND REFERENCES
TO THE PPIP PROGRAM AND IDENTITIES OF PASSIVE INVESTORS
<u>IN THE FUNDS MANAGED BY THE COUNTERPARTY INSTITUTIONS</u>**


PETRILLO KLEIN & BOXER LLP
655 Third Avenue, 22nd Fl.
New York, New York 10017
Telephone: (212) 370-0330
*Attorneys for Ross Shapiro*

ALSTON & BIRD LLP
90 Park Avenue
15th Floor
New York, NY 10016-1387
Telephone: (212) 210-9400
*Attorneys for Tyler Peters*

GREENBERG TRAURIG LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-9200
*Attorneys for Michael Gramins*

**PRELIMINARY STATEMENT**

Defendants Ross Shapiro, Michael Gramins, and Tyler Peters respectfully submit this reply memorandum of law in further support of their motion *in limine* to preclude the government from offering any evidence or making any references at trial relating to: (i) the Public-Private Investment Program ("PPIP"), (ii) the investment of the U.S. Treasury Department (the "Treasury") in PPIP investment vehicles, and (iii) the identity of the underlying investors in the funds managed by the counterparty firms. (Dkt. No. 162). The government's opposition brief offers a series of non-sequiturs that fail to articulate any connection between any of this evidence and the elements of the charged offenses. Consequently, this evidence is inadmissible under F.R.E. 401. Furthermore, the admission of such evidence would create substantial prejudice and confusion and is therefore precluded under F.R.E. 403. Accordingly, this evidence should be barred at trial.

**ARGUMENT**

**I.     Evidence Regarding PPIP Funds and the Investment of the Treasury in PPIP Vehicles Should be Barred as Irrelevant, Confusing, and Prejudicial.**

The government argues that the decision by Michael Canter, an employee of Alliance Bernstein, to report Jesse Litvak's conduct (in connection with a PPIP fund investment) to the Treasury is probative of materiality.[1] Gov. Opp. 2.[2] This claim is vacuous. The government

---

[1] As indicated in the government's opposition papers, the "Manager" referenced in the defense opening brief is Michael Canter, and alleged "Victim 3" in this case is Alliance Bernstein. As previously noted, Mr. Canter discovered that another trader (Jesse Litvak) employed by another broker-dealer was engaged in conduct similar to that alleged here. Mr. Canter reported Mr. Litvak's conduct to the Treasury, triggering an investigation that led to Litvak's indictment.

[2] "Gov. Opp." refers to the Government's Opposition To Defendants' Motion *In Limine* To Preclude Evidence and References To The PPIP Program And Identities Of Passive Investors In The Funds Managed By The Counterparty Institutions. The Court of Appeals' opinion in *United States v. Litvak*, 808 F.3d 160 (2d Cir. 2015) is cited throughout as "*Litvak*." The original trial proceedings in the *Litvak* case are cited as "*Litvak I*" and the trial transcript in that case is cited as "Trial Tr."

1

offers no explanation as to *why* Canter's decision to report Litvak to the Treasury is remotely relevant to materiality.  To be sure, the government offers the bald, unfounded assertions that "Canter's actions . . . are highly probative" of materiality, and that "Canter must be allowed to testify about . . . what he did."  Gov. Opp. 2-3.  But nowhere in its brief does the government articulate any *connection* between Canter's assessment of the materiality of the alleged misrepresentations and his post-hoc actions.  Even if Canter's decision to report Litvak's alleged conduct was somehow relevant to his assessment of *Litvak's* alleged misrepresentations, it has no connection to *the separate and distinct misrepresentations* alleged here.

Furthermore, as noted in the defense opening brief, the evidence in *Litvak* showed that Canter believed it "important" to report Litvak's conduct to the Treasury not because it had any bearing on his investment decision, but because he believed he might be required to do so.  *See* Def. Op. Br. 6 (quoting Canter's testimony in *Litvak*).  Thus, the "importance" Canter placed on reporting Litvak's conduct had no connection to the question of whether the alleged misrepresentations were "material" to his earlier decision to invest in non-agency RMBS, a question that would turn on whether "there was a substantial likelihood that the disclosure of the omitted fact[s] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available" to Canter at the time of his investment.  *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988).

The government also avers that Canter's duty to provide "best execution" to his investors was violated as a result of both the defendants' alleged misrepresentations, as well as Litvak's conduct.  *See* Gov. Opp. 4.  First, to the extent Canter's obligations to his investors were violated due to Litvak's actions, such evidence is irrelevant to this case and the admission of such evidence at this trial is highly likely to prejudice the defendants and sow confusion among the

jurors.  Second, the government's contention that the PPIP evidence is necessary to explain why Canter owed a "special" duty of best execution to the PPIP fund and risked losing his mandate to invest those funds is similarly baseless.  As the government recognizes, Canter owed a duty of best execution to all of his investors, and the government does not explain how this purported "special" duty owed to the PPIP fund differed in any material respect from the duty owed to all investors.

Third, the government neglects to explain how the alleged misrepresentations could have possibly caused Canter to violate his duty of best execution to *any* of his investors.  The very premise for this claim – that, had Canter been made aware of Litvak's misrepresentations, he would have been able to obtain the relevant bonds at a cheaper price – is unsupported by any evidence.  Moreover, the duty of an investment manager to provide best execution to investors is a component of an investment manager's fiduciary obligation to act in the interests of investors and entails an obligation to consider various factors, including "price, speed of execution, certainty of execution, and the desire not to move a market."  Trial Tr. 2162-63 (testimony of Mark Menchel); *see also* Trial Tr. 524 ("Managers should consider the full range and quality of a broker's services in placing brokerage, including, among other things, execution capability, financial responsibility and the responsiveness to the manager.") (testimony of Michael Canter). In providing best execution, an investment manager is compelled to compare the bonds and prices available from different counterparties in the market in search of the best available investment option.  Trial Tr. 529 (Canter's testimony).  Canter followed this process and satisfied his duty of best execution.  Trial Tr. 529-33.  Indeed, Canter himself concluded that the bonds he purchased from Litvak *were obtained at favorable prices*.  Trial Tr. 496.

Finally, the government offers no authority (nor does any exist) for the proposition that Canter could have somehow violated his duty to provide best execution despite taking actions he believed to be in the best interests of investors based on all of the information reasonably available to him.[3]

## II.     Testimony Concerning the Identities of the Underlying, Passive Investors in the Counterparty Funds Should Be Barred as Irrelevant and Prejudicial.

The government maintains that it must be allowed to introduce evidence of the identities of the underlying investors in counterparty funds in order to establish "context and certain elements of the scheme to defraud." Gov. Opp. 5. For example, the government contends that evidence about whether the underlying investors were "pension funds, mutual funds, high-net worth individuals" or "sovereign wealth funds" is relevant "context" to evaluate materiality and fraudulent intent. Gov. Opp. 5. But the government offers not a hint as to *why* this context is necessary, in the slightest, for jurors to evaluate these elements. No more than basic common sense is required to recognize that the identity of a particular passive investor has no bearing on an investment manager's assessment of whether an alleged misrepresentation is material to the purchase of non-agency RMBS. Nor can the identity of the passive investor possibly bear on the defendants' alleged intent to defraud. Indeed, the government does not even claim the defendants were *aware* of the identities of the passive investors in the counterparty funds, let alone how such information may have affected their intent.

Inexplicably, the government also suggests the defense intends to make a nullification argument at trial. To the contrary, the defense merely seeks to advance the Second Circuit's

---

[3] The government also speciously suggests that the *Litvak* Court perceived the PPIP evidence to be relevant to Litvak's retrial despite its dismissal of the PPIP counts. The government bases its claim on the Court's comment that the *Litvak* case implicated the "public interest" through "the involvement of the Treasury as a major investor." The government misapprehends the Circuit's comment, which was simply offered as an additional reason to decline Litvak's invitation to interpret the intent element under Section 10(b) (which requires a showing of intent to deceive)

4

position that what "mattered to sophisticated investors" is "relevant to the element of materiality," *Litvak,* at 185, and to whether the investors received "the benefit of their bargain" (which is definitionally tied to the investor's knowledge and expectations). *See United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1181 (2d Cir. 1970). The nullification doctrine has no application where, as here, the facts alleged by the government ***do not constitute a crime.***

Lastly, as noted in the defense opening brief, the evidence should be barred under Rule 403 because whatever marginal probative value such evidence might have is greatly outweighed by the substantial unfair prejudice that would attend its admission. *See* Fed. R. Evid. 403. Evidence that underlying investors include public or private pension funds, charities, or universities would risk suggesting to jury members that their own financial interests (as investors in or supporters of these institutions) or the interests of non-commercial or unsophisticated parties are at stake in this case. Such appeals are improper and should not be countenanced. *See United States v. D'Anna*, 450 F.2d 1201, 1205-06 (2d Cir. 1971); *United States v. Lotsch*, 102 F.2d 35, 37 (2d Cir. 1939); *United States v. Palma*, 473 F.3d 899, 902 (8th Cir. 2007); *United States v. Trutenko*, 490 F.2d 678, 679 (7th Cir. 1973) (cases discussed in defense opening brief at 9).

## CONCLUSION

For the foregoing reasons, and those stated in the defendants' opening brief, defendants respectfully move *in limine* to preclude the government from eliciting evidence concerning or making reference at trial to (a) PPIP or PPIP investment funds, (b) the investment of Treasury or taxpayer money in PPIP investment vehicles, and (c) the identities of the underlying investors in the funds managed by the counterparty firms.

---

in the same manner in which the intent element is interpreted under the mail and wire fraud statutes (which requires a showing of intent to harm).

5

Respectfully submitted,

PETRILLO KLEIN & BOXER LLP

By: /s/ Joshua Klein
Guy Petrillo (CT19924)
Joshua Klein (PHV07748)
Leonid Sandlar (PHV07700)
Mirah Curzer (PHV08047)
655 Third Avenue, 22nd Floor
New York, New York 10017
Telephone: (212) 370-0330
Facsimile:   (212) 370-0391
gpetrillo@pkbllp.com
*Attorneys for Ross Shapiro*

ALSTON & BIRD LLP

By: /s/ Brett D. Jaffe

Brett D. Jaffe (PHV07701)
Joseph G. Tully (PHV07702)
90 Park Avenue
15th Floor
New York, NY 10016-1387
Telephone: (212) 210-9400
Facsimile:  (212) 210-9444
Brett.Jaffe@alston.com
*Attorneys for Tyler Peters*

GREENBERG TAURIG LLP

By: /s/ Marc L. Mukasey
Marc L. Mukasey (PHV07694)
Greenberg Traurig LLP
200 Park Avenue
New York, NY 10166
Telephone:  (212) 801-9200
Facsimile:   (212) 801-6400
mukaseym@gtlaw.com
*Attorneys for Michael Gramin*

6

## CERTIFICATE OF SERVICE

      I hereby certify that on August 5, 2016 a copy of foregoing Memorandum of Law in Further Support of Defendants' Motion *in limine* to Preclude Evidence and References to the PPIP Program and Identities of Passive Investors in the Funds Managed by the Counterparty Institutions was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: New York, New York
        August 5, 2016

          /s/ Mirah Curzer
        Mirah Curzer (PHV08047)
        655 Third Avenue, 22nd Floor
        New York, New York 10017
        Telephone: (212) 370-0330
        Facsimile: (212) 370-0391
        mcurzer@pkbllp.com