UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> vs. <br><br> ROSS SHAPIRO, MICHAEL GRAMINS, AND TYLER PETERS. | CRIM NO. 3:15-CR-155 (RNC) |

### DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR JOINT MOTION *IN LIMINE* TO EXCLUDE EVIDENCE THAT DEFENDANTS ACTED AS "AGENTS" OR "BROKERS" OR OWED ANY AGENCY DUTIES TO COUNTERPARTIES

Defendants Ross Shapiro, Michael Gramins, and Tyler Peters respectfully submit this Reply Memorandum of Law in further support of their Joint Motion *in Limine* ("Motion") to preclude evidence that Defendants acted as "agents" or "brokers" or owed any agency duties to counterparties. Defendants' Motion also seeks to preclude the government from eliciting testimony that adopts terminology likely familiar to jurors from their own dealings with agents, such as references to Defendants as "brokers" or to profits earned on trades as "commissions." (Dkt. No. 164).

### ARGUMENT

In its Opposition, the government concedes that it cannot argue that the defendants were the legal agents of any of their counterparties, and asserts that it does not "wish to suggest to the jury the Defendants owed agency duties to trading counterparties." *See* Gov't Opp. to Defts'. Mot. in Limine ("Opp Br.") (Dkt. No. 183) at 2. Of course, this concession is not new; the government has previously confirmed to this Court that Defendants and the alleged "victims" transacted on a

principal-to-principal basis, and that no agency relationship existed between Defendants (or Defendants' employer, Nomura Securities International, Inc. ("Nomura")) and the customers with whom Nomura traded.  *See* Motion to Dismiss Hr'g Tr. at 19:2-6, *United States v. Shapiro, et al.*, No. 3:15-CR-155 (RNC) (Apr. 6, 2016) (Exhibit 1) ("legally there was a principal relationship . . . .").

However, the argument that the government <u>does</u> intend to make, as revealed in its Opposition, validates the concerns Defendants raised in their Motion.  The government intends to argue that Defendants' alleged misrepresentations led counterparties to believe "that the defendants were working on their behalf to facilitate trades, creating a level of trust that otherwise may not have existed if the defendants had held themselves out as principals."  Opp. Br. 3.  In other words, although the government concedes that Defendants were never the agent of any customer and that "'dealers' engaged in 'principal' trades that have no fiduciary duties to their counter-parties," it still intends to elicit testimony from witnesses directly to the contrary.  The government should not be permitted to pursue this highly prejudicial strategy for four separate reasons.

First, it is plain that, as in *Litvak*, the government will seek to obtain testimony from fact witnesses to support the false premise that the Defendants were, in fact, acting as agents in connection with certain transactions.  For example:

> Q:   Are you familiar with the distinction between trading as an agent and trading as a principal?
>
> A:   Yes.
>
>   [. . .]
>
> Q:   So in effect which is Mr. Litvak in this trade?
>
> A:   In this one he's acting as an agent, a broker.

2

*See* Trial Tr. 943:11-944:3, *Litvak*, No. 3:13-CR-19 (Feb. 21, 2014) (Exhibit 3, hereinafter "Ex. 3"). The government introduced the legal concept of agency to the witnesses and then elicited from each witness what amounted to opinion testimony concerning Nomura's role in the transaction (principal or agent). The government never revealed or explained to the jury that, as a matter of law and fact, the witness was incorrect. This manner of questioning is by its very nature prejudicial and should be precluded.

Second, although the Government contends in its Opposition that it "does not intend to argue that the defendants 'committed fraud by violating some independent duty of trust owed to the victims,'" the Government then proceeds to suggest that because of a perceived agency relationship, Defendants owed duties of trust and confidence not present in a principal transaction. Opp. Br. 3. And, based on that purported "level of trust," the government contends it should have the opportunity to argue to a jury that "a reasonable investor under such circumstances may be misled into trusting the defendants' representations." Opp. Br. 4.

The Government's reference to a heightened "level of trust" is calculated to suggest to jurors that as a result of some perceived agency relationship, Defendants owed heightened duties to the alleged victims. It is no surprise that the government's argument on this point closely tracks the legal test in this Circuit for the existence of a fiduciary duty: "In determining whether a fiduciary relationship exists, a court will 'conduct a fact-specific inquiry into whether a party reposed confidence in another and reasonably relied on the other's superior expertise or knowledge.'" *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 459 (S.D.N.Y. 2006) (quoting *Lumbermens Mut. Cas. Co. v. Franey Muha Alliant Ins. Servs.*, 388 F.Supp.2d 292, 305 (S.D.N.Y.2005)) (internal quotation marks omitted). The government should not be permitted to offer testimony that a perceived agency relationship led to a heightened "level of trust" between

3

Defendants and the alleged victims, while simultaneously conceding that as a matter of law and fact no such relationship existed. *See Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (holding that intermediary that accepted bids and represented that it had bidder's "best interests in mind,'" could not be liable for "undisclosed profit" because there was no agency relationship as a matter of law).[1]

Third, as discussed at length in Defendant's Brief, a counterparty's erroneous perception of the fundamental relationship between his firm and Nomura cannot be probative of materiality. *See* Def. Br. at 8-9. Materiality is an objective standard, and materiality must be determined by reference to a reasonable investor in the RMBS market and not any particular counterparty. *See In re WorldCom, Inc. Sec. Litig.*, No. 02-Civ.-3288 (DLC), 2005 WL 408137, at *4 (S.D.N.Y. Feb. 22, 2005) ("[T]he 'reasonable investor' is equivalent to the market itself.") (quoting *In re ICN/Viratek Sec. Litig.*, No. 87-Civ.-4296 (S.D.N.Y. July 15, 1996)). It is simply not possible to conclude that a reasonable investor in the RMBS market – composed of the world's most sophisticated hedge funds and asset managers – misunderstood the fundamental nature of its relationship with Nomura. A counterparty with such an erroneous view cannot be a proxy for the reasonable investor. Neither can the testimony of such a mistaken counterparty as to the nature of the relationship be probative of materiality. *See* Def. Br. at 8-9.

Finally, because the government has conceded that Defendants transacted at all times on a principal-to-principal basis and owed no fiduciary duties to their counterparties, references to Defendants as "brokers" and their trading profits as "commissions" are unfairly prejudicial and

---

[1] The Government's examples of conduct that "misled the victims as to the nature of their relationship" with Defendants (Opp. Br. 2) are themselves misleading. For example, the series of statements by Mr. Peters described by the Government as "false" are actually demonstrably true. Similarly, the quote by an investment manager designed to show that he understood that he had an agency relationship with Mr. Gramins is inaccurately presented; the complete quote makes clear that the customer actually thought no such thing: "Yes but my point is that you are bidding for clients, and you can't drop clients at the last minute and just buy for the house. ***Logistically, I understand you had to do that.***" NSISEC00051412 (emphasized portion omitted from Government's opposition).

4

will likely mislead the jury. Each of these terms is commonly identified with an agency relationship that all parties agree never existed. Jurors will undoubtedly be familiar with "brokers" and "commissions" from their own business dealings (*e.g.*, real estate brokers and stock brokers) and would understandably associate those terms with the heightened duties of trust that those types of brokers owed to those with whom they have an agency relationship. Indeed, in *Litvak* the government sought to force just such an association in the minds of the jurors when it analogized the defendant's conduct to that of a dishonest real estate agent. Such analogies, as well as the use of terms suggesting the existence of an agency relationship that does not exist, are improper and highly prejudicial and should be precluded.

## CONCLUSION

For the forgoing reasons, Defendants Ross Shapiro, Michael Gramins, and Tyler Peters respectfully request that the Court grant their motion *in limine* pursuant to Rules 401 and 403 of the Federal Rules of Evidence.

August 5, 2016

                        Respectfully submitted,

                        **ALSTON & BIRD LLP**

                        By: */s/ Brett D. Jaffe*
                              Brett D. Jaffe (PHV07701)
                              Michael Brown (PHV_____)
                              Joseph G. Tully (PHV07702)
                              90 Park Avenue
                              New York, NY 10016
                              Telephone: (212) 210-9493
                              Facsimile: (212) 210-9444
                              brett.jaffe@alston.com
                              mike.brown@alston.com
                              joe.tully@alston.com
                              *Counsel for Tyler Peters*

**PETRILLO KLEIN & BOXER LLP**

By: */s/ Guy Petrillo*
    Guy Petrillo (CT19924)
    Josh Klein (PHV07748)
    Leonid Sandlar (PHV07700)
    655 Third Avenue, 22nd Floor
    New York, New York 10017
    Telephone: (212) 370-0330
    Facsimile: (212) 370-0391
    gpetrillo@pkbllp.com
    *Counsel for Ross Shapiro*

**GREENBERG TRAURIG LLP**

By: */s/ Marc L. Mukasey*
    Marc L. Mukasey (PHV07694)
    Greenberg Traurig LLP
    200 Park Avenue
    New York, NY 10166
    Telephone: (212) 801-9200
    Facsimile: (212) 801-6400
    mukaseym@gtlaw.com
    *Counsel for Michael Gramins*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of August, 2016, a copy of the foregoing Defendants' Reply Memorandum of Law in Further Support of Their Joint Motion *in Limine* to Exclude Evidence that Defendants Acted as "Agents" or "Brokers" or Owed Any Agency Duties to Counterparties was uploaded to and filed with the CM/ECF System for the United States District Court for the District of Connecticut, with a courtesy copy delivered via e-mail to the following counsel:

> Liam Brennan, Esq.
> Heather L. Cherry, Esq.
> Assistant U.S. Attorney
> U.S. Department of Justice
> District of Connecticut
> Connecticut Financial Center
> 157 Church Street, Floor 25
> New Haven, Connecticut  06510

/s/ *Brett D. Jaffe*
Brett D. Jaffe (PHV07701)