UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>ROSS SHAPIRO,<br>MICHAEL GRAMINS, and<br>TYLER PETERS,<br><br>               Defendants. | No. 15-cr-00155 (RNC)<br><br>March 28, 2017 |

**DEFENDANTS' MOTION TO COMPEL THE GOVERNMENT TO PRODUCE
CO-CONSPIRATOR IDENTITIES AND TO PRECLUDE
EVIDENCE OF UNIDENTIFIED TRADES AND
EVIDENCE SUBJECT TO DEFENDANTS' MOTIONS *IN LIMINE*__**

Defendants Ross Shapiro, Michael Gramins, and Tyler Peters, by their respective counsel, move this Court for an order directing the government to provide forthwith the names of the individuals the government alleges are co-conspirators of Defendants, and to preclude the government from offering (1) any evidence at trial of any bond trades the government has failed to identify in the Indictment or in its exhibit list; and (2) any evidence subject to Defendants' motions *in limine*, due to the government's failure to provide the proffer of this evidence requested by the Court.

**I.    The Government Should Be Precluded from Offering Evidence
at Trial Regarding Any Bond Trades that It Has Failed to Identify.**

The government should only be permitted to offer evidence of the RMBS trades that have been disclosed to Defendants in the Indictment or in the government's list of exhibits. At this late date, Defendants cannot adequately prepare for a trial involving any bond trades that the government has failed to disclose.

Five months ago, in October 2016, Defendants raised the issue of unfair surprise regarding any unidentified bond trades, and the Court warned the government that it would not

1

permit trial by ambush.  The Court instructed:  "I think the defendants are perfectly entitled to know what the government has in mind about a trade that is not on the list.  What exactly does the government have in mind and what makes the government think that's okay?"  Oct. 26, 2016 Hrg. Tr. at 90:12-15.  With trial only a month away, the government has failed to follow the Court's instruction and identify any uncharged trades or a basis for their use.

The Court's instruction regarding the need to identify the evidence of RMBS trades to be offered at trial is consistent with the instructions of another court in this District handling a similar RMBS case.  In *United States v. Litvak*, the district court required the government to produce a proffer of scheme evidence.  There, the court instructed the government as follows:

> [W]hat I would ask, once you [the government] have done your analysis and made your conclusions about what you think you're likely to want to introduce that are in this uncharged conduct, . . . I want you to communicate to me the following information: what exhibits are at issue and a very brief summary of why you want to offer uncharged transaction 27. [For example,] [i]t relates to Indictment Count 7, and it will tend to prove as to X or it will tend to prove as to the overall scheme Y. . . .  In particular, how will it be part of my, in effect, argument, the weight of my evidence argument at the end of the day so again I don't want a really long thing.  I want a crib sheet.  One will tell the defendant really why and maybe, not likely, maybe they may say they don't object to this or that.  One, more importantly, we'll be focused when we come back why do they object to it and how it doesn't tend to do what you intend it to do.

*Litvak* Jan. 10, 2014 Pretrial Conf. Tr. at 73:15-74:15; *see also* Gov't Revised Proffer of Scheme Evidence, *United States v. Litvak*, No. 13-cr-19 (D. Conn. Dec. 5, 2016), ECF No. 468.  The district court in *Litvak* deemed that instruction necessary for the same reason the Court instructed the government to proffer evidence here – because the government expressed its intention to introduce evidence and testimony regarding RMBS trades that it has never identified to the defense.

The defense has been seeking information on the uncharged trades for over a year. On January 29, 2016, Defendants moved for a bill of particulars "to particularize the trades [the government] intends to prove at trial." Defs' Mem in Support of Their Joint Motions to Dismiss and for a Bill of Particulars (Jan. 29, 2016) [ECF No. 111] at 24. At a hearing on the motion, the government stated that its recently disclosed exhibit list represented "the transactions that are going to be the subject of the government's case in chief." Hearing of July 1, 2016, Tr. at 17:4-11. The Court denied Defendants' motion based on the government's representation that it had disclosed all relevant trades through its witness and exhibit lists:

> With regard to the motion for a bill of particulars, ECF Number 110, I'm denying that motion in light of the government's production of its list of witnesses and exhibits. I think that having identified approximately 20 transactions involving perhaps 10 counter-parties, the government has provided the defense with whatever information is needed to enable the defense to properly prepare.

*Id.* at 22:10-17. At that time, based on this representation by the government, the defense understood that the government intended to introduce as many as twenty different trades: thirteen trades that were referenced in the Indictment, and seven other trades that were not referenced in the Indictment but were referenced in documents contained in the government's exhibit list.

It has become clear, however, that the government intends to introduce evidence at trial regarding additional trades that have never been identified to the defense. In fact, at the hearing on October 26, 2016, AUSA Brennan stated, "I think there's going to be some testimony about one instance in where there's a direct trade with CalPERS . . . ." Oct. 26, 2016 Hrg. Tr. at 24:10-12. **However, there is no reference to the CalPERS trade in the Indictment or in the exhibit list**. The government later confirmed that it intended to introduce testimony at trial about other RMBS trades not identified in either the Indictment or the government's exhibit list:

3

> [W]e don't intend to offer documents pertaining to other trades. That's not our intention. So there won't be trade tickets and things like that. Now, what may happen is that there might be testimony by witnesses, including Nomura employees, about things they saw and heard on the desk and *that might raise other trades*. And *one of those other trades* is the CalPERS trade that Mr. Brennan was referring to earlier today. And that CalPERS trade they are aware of it or should be aware of it or could be aware of it because it is in discovery. Mr. Feely . . . . mentions it in his grand jury testimony starting on page 36 of that testimony, and he describes the first time that he sort of was introduced to this technique of lying and we ask him questions about this CalPERS trade. So it is in fact in the discovery, and any other sort of testimony like this would be in the discovery in the form of witness 302's. So we're not trying at all to surprise unfairly the defendants. All in evidence, should be in their possession.

*Id.* at 87:3-13 (emphasis added).

Pursuant to the Standing Order on Discovery, counsel for Defendants have conferred with the government and requested that the government identify any additional trades, beyond the Indictment and exhibit list trades, that it plans to address at trial. The government, however, has refused to identify these trades despite the Court's explicit instruction that Defendants are entitled to it, and the parties should confer on the topic. *See id.* at 90:12-21. The government has attempted to justify its refusal by asserting that Defendants can simply find the trades by reviewing voluminous transcripts of grand jury testimony and numerous interview memoranda that have been produced in this case, because any additional trades that might be addressed by the government at trial are purportedly referenced somewhere in the discovery.

The government's proposal improperly shifts the burden to Defendants to identify the scheme evidence. The government has produced nearly fifty memoranda from interviews with Nomura traders and salespeople, and with counterparty traders. These memoranda include references to a large number of bond trades that are not referenced in the Indictment or the government's exhibit list. *See, e.g.*, NOM_USAOCT_000001 (discussing a LBMLT 2004-6 A3

4

trade); NOM_USAOCT_000040 (discussing a HVMLT 2005-8 1A2 trade); NOM_USAOCT_000182 (discussing a BAYV 2006-D 1A4 trade); NOM_USAOCT_000189 (discussing a GTRE 2008-MH1 A3 trade); NOM_USAOCT_000743 (discussing ABLT 2007-OA1 A1, CWALT 2006-OA8 A1, CWALT 2006-OA17 1A1A, and HVMLT 2005-8 1A2A trades). Thus, the government's argument to the Court – *i.e.*, that the defense is "aware of" or "should be aware of" every other trade that may be introduced at trial, simply because those trades are "in the discovery" and "in [the defense's] possession" – is belied by the sheer volume of discovery. *See United States v. Luna*, No. 3:05-CR-58 (SRU), 2006 WL 1668006, at *2 (D. Conn. May 17, 2006) ("[O]verwhelming a defendant with discovery can obscure the particulars of a charge as fully as denying discovery. Thus, when faced with 'mountains' of discovery or 'massive disclosures,' a defendant may still be unable to prepare for trial and prevent surprise."). To date, there has been more than six terabytes of data produced to the defense in discovery, which is equivalent to more than four million documents. Moreover, the government's dismissive suggestion that the burden is on the defense to sift through mountains of transcripts and memoranda to isolate any purported scheme evidence, rather than simply disclosing the information to Defendants, is inappropriate and unfairly burdensome to Defendants.

The Court has issued clear instructions that "[t]his is not going to be a trial by surprise or ambush." Mar. 9, 2017 Hrg. Tr. at 32:20-21. The government undoubtedly knows the trades it would seek to introduce as scheme evidence based on its prior representations to the defense. The Court instructed the government to proffer relevant information on those trades five months ago (just as the government was required to provide in *Litvak*), but the government has intentionally failed to do so. The government's conduct raises significant risk of unfair surprise

to Defendants, and it should not be permitted to use this tactic to ambush Defendants at trial. This is not fair play.

### II. The Government Should Provide the Names of All Unindicted Co-Conspirators.

The Court should direct the government immediately to provide the names and contact information of all individuals that it alleges to be unindicted co-conspirators, or intends to argue are unindicted co-conspirators at trial. More than eight months ago, on July 14, 2016, counsel for defendant Tyler Peters sent a letter to the government requesting, among other things, "[t]he name and last known address of any unindicted co-conspirators." *See* Exh. A, Letter from B. Jaffe to the U.S. Attorney's Office, dated July 14, 2016, at 4. The letter further requested, "if you object to the production of any materials requested herein that are in the government's possession, custody or control, we ask that you notify us of that decision so that we may file appropriate motions with the Court." *Id.* at 2. On August 8, 2016, the government responded to counsel's letter, but declined to identify any unindicted co-conspirators or object to Defendants' request for their names. *See* Exh. B, Letter from U.S. Attorney's Office to B. Jaffe, dated Aug. 8, 2016.

Longstanding case law makes it clear that Defendants are entitled to a list of unindicted co-conspirators, and the government's obfuscation is quite surprising, especially in light of the Court's admonition that the Court does not want a "trial by surprise or ambush." The government must disclose this information when "the names of unindicted coconspirators are necessary to prepare a defense and avoid surprise." *United States v. Solomonyan*, 451 F. Supp. 2d 626, 641-42 (S.D.N.Y. 2006). To make this determination, courts consider several factors:

> (1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the Government otherwise has provided adequate notice of the particulars; (4) the volume of pretrial disclosure; (5) the potential danger to co-conspirators and

>the nature of the alleged criminal conduct; and (6) the potential harm to the Government's investigation.

*United States v. Nachamie*, 91 F. Supp. 2d 565, 572 (S.D.N.Y. 2000); *see also United States v. Barrett*, 153 F.Supp.3d 552, 572 (E.D.N.Y. 2015) ("Courts regularly employ a six-factor test to evaluate the propriety of disclosure" of unindicted co-conspirators.).  In this case, the *Nachamie* factors weigh decidedly in favor of granting Defendants' request for the names of the unindicted co-conspirators.

First, there are a multitude of individuals whom the government may argue are unindicted co-conspirators, which weighs in favor of disclosure. *See United States v. Kahale*, 789 F. Supp. 2d 359, 372 (E.D.N.Y. 2009) (finding that identifying unindicted co-conspirators was necessary because "the number of potential co-conspirators is potentially large as there are four indicted defendants and an unknown number of unindicted individuals."). Defendants worked as RMBS traders at Nomura for over five years, from approximately late 2009 until they were placed on leave in late 2014.  During that time, the RMBS desk at Nomura employed numerous other traders, salespeople, compliance staff, and supervisors, many of whom have been interviewed by the government during the course of its investigation, and many of whom have either admitted to engaging in the conduct at issue or about whom the evidence shows had actual knowledge of such conduct.

Moreover, the Third Superseding Indictment (ECF No. 307, "Indictment") in this case is replete with references to unnamed co-conspirators. *See, e.g.,* Indictment ¶ 33 ("[t]he purpose of the conspiracy was for SHAPIRO, GRAMINS, PETERS *and others* to enrich Nomura and themselves . . . ." (emphasis added); *id.* ¶ 34 ("[t]he manner and means by which SHAPIRO, GRAMINS, PETERS *and others*, both known and unknown to the Grand Jury, sought to accomplish the objects of the conspiracy . . . ." (emphasis added); *id.* ¶ 35 ("the defendants *and*

7

*others*, both known and unknown to the Grand Jury." (emphasis added).[1]  As other courts have acknowledged, these oblique references to unnamed co-conspirators further demonstrate the need to identify such individuals to avoid prejudice to the defense:

> [I]t is uncertain how many co-conspirators are involved here . . . . The indictment repeatedly provides that defendant operated his alleged scheme "together with others."  The indictment's allegations in the health care fraud count, the false claims counts, and the money laundering counts—all of which suggest the participation of unindicted co-conspirators—might involve the same co-conspirators, entirely different co-conspirators, or different subsets of the same general group.  The potential for unfair surprise looms large here, and this factor therefore counsels strongly in favor of a bill of particulars regarding unindicted co-conspirators.

*United States v. Barrett*, 153 F. Supp. 3d 552, 572-73 (E.D.N.Y. 2015) (citations omitted).

Knowing the identity of these individuals is critical to the defense's preparation for trial, in particular to address potential evidentiary issues relating to statements made by these individuals.  Defendants should not be prejudiced by having to guess at the identities of the alleged unindicted co-conspirators.

The second *Nachamie* factor – the significant length and breadth of the alleged conspiracy – also weighs heavily in favor of disclosure, as the conspiracy alleged here spanned from 2009 through 2013.  *See* Indictment ¶ 32; *see also Nachamie*, 91 F. Supp. 2d at 573 (granting the defendant's request for disclosure of the unindicted co-conspirators where "the alleged conspiracy has operated for a significant period of time (more than three years)"); *Kahale*, 789 F. Supp. 2d at 372 (granting defendant's request for disclosure of unindicted co-conspirators in lengthy five-year conspiracy); *United States v. Falkowtiz*, 214 F. Supp. 2d 365,

---

[1] In several instances, the Indictment also states that, as part of an alleged scheme, Defendants "provided subordinate traders with language to use in negotiations with clients, and critiqued subordinate traders' trading practices after they had executed trades."  Indictment ¶ 4; *see also id.* ¶¶ 34(a)-(d).  The Indictment fails, however, to identify any allegedly subordinate trader who might be viewed by the government as a co-conspirator.

8

391 (S.D.N.Y. 2002) (granting defendant's request for disclosure of unindicted co-conspirators in four-year conspiracy).  As described above, during the alleged conspiracy period, Defendants worked with many traders, salespeople, compliance staff, and supervisors at Nomura.  Defendants also traded RMBS with numerous counterparties ranging from major financial institutions to smaller hedge funds.  The government has alleged a sweeping conspiracy involving multiple categories of RMBS trades, *see* Indictment ¶¶ 26, 34, and a scheme that involves use of the interstate wires to advertise the alleged fraud, *see*, *e.g.*, *id.* ¶ 34(d).  The government's continued non-disclosure of the names of the unindicted co-conspirators subjects Defendants to a significant risk of "unfair surprise" at trial.  *Barrett*, 153 F. Supp. 3d at 573.

Third, the government has not "otherwise [] provided adequate notice of the particulars" regarding unidentified co-conspirators.  *Nachamie*, 91 F. Supp. 2d at 572.  To date, the government has never specifically identified those individuals that it alleges to be co-conspirators.

Fourth, the tremendous volume of discovery produced in this case weighs strongly in favor of granting Defendants' request.  The government has produced hundreds of thousands of pages of documents related to the Nomura investigation alone, and millions of pages of documents related to other investigations in this marketplace.  *See also* Gov't Motion to Continue and Exclude Time Under the Speedy Trial Act (Jan. 3, 2017) [ECF No. 279], at 8 ("discovery now stands well above 6 terabytes (that is, 6,000 gigabytes) of data").  The massive amount of discovery in this case makes it impossible for Defendants to determine the identities of all unindicted co-conspirators.  *See Barrett*, 153 F. Supp. 2d at 573 (noting the volume of discovery was "quite large" where it involved "tens of thousands of pages of documents").

9

Nor is there any risk of danger to alleged co-conspirators by disclosure of their identities. This factor is intended to protect witnesses in organized crime, violent narcotics, or weapons-trafficking conspiracies who might be subject to physical harm if their identities were disclosed. *See Nachamie*, 91 F. Supp. 2d at 573 ("[T]here is no legitimate concern that disclosing the names of unindicted co-conspirators will endanger those individuals . . . [T]his case charges Medicare fraud—not narcotics trafficking or murder"); *see also United States v. Barret*, 824 F. Supp. 2d 419, 444 (E.D.N.Y. 2011) (denying request to identify unindicted co-conspirators where "safety is a concern in this case . . . [T]he alleged conspiracy involves narcotics trafficking and the criminal complaint alleges regular use of firearms in connection with the conspiracy."). The unindicted co-conspirators in this case would presumably be current or former participants in the RMBS market, whether employed at Nomura or other financial institutions. Any suggestion that these unindicted co-conspirators would face any danger resulting from the disclosure of their identities is completely unfounded.

There is also little risk of harm to the government's investigation by disclosure of unindicted co-conspirators. The government's investigation into this matter is over two years old. At this point, the government has interviewed dozens of participants in the RMBS market, including nearly all traders and salespeople on the non-agency RMBS desk at Nomura. The government has already had multiple years to conduct its investigation, and has provided a number of RMBS desk traders and salespeople with non-prosecution agreements and subpoenaed them to testify before the grand jury. This case was initially scheduled to commence trial over three months ago. On March 23, 2017, the government provided Defendants with a revised witness list identifying additional trial witnesses, presumably the government's final witness list. No harm is caused to the government's investigation by disclosing the name of

unindicted co-conspirators at this late stage, but significant harm is caused to the defense without these names.

In *United States v. Kahale*, 789 F. Supp. 2d 359, the district court considered another factor in addition to those described in *Nachamie*: the complexity of the fraud. *Id.* at 373. The court granted the defendant's request for the names of unindicted co-conspirators in part because "[c]ertain charges, such as the fraud charges alleged here, by their nature carry a greater potential for causing unfair surprise at trial due to their complexity":

> Where, as here, the acts which form the basis of the charges may outwardly appear to be legitimate business communications, there is a greater potential for confusion over what precisely the government intends to prove at trial and a concomitant greater need to identify with some particularity the "others" who are referred to in the Indictment so that defendants can adequately prepare for trial.

*Id.* In this case, the complexity of the alleged conduct makes the names of the unindicted co-conspirators essential for Defendants' preparation for trial. For example, the electronic chats included in the government's exhibit list often include numerous participants from Nomura and its counterparties. Likewise, the compliance meeting sign-in sheets on the government's exhibit list include dozens of Nomura managers, traders, and salespeople. It is impossible for Defendants to independently determine which individuals referenced in the exhibits are alleged by the government to be co-conspirators, as opposed to mere witnesses or bystanders. This is especially true because the defense asserts that all of the negotiations at issue in this case were "legitimate business communications," and it is thus impossible for Defendants to know whom the government considers to be a co-conspirator. Thus, this additional factor weighs in favor of granting Defendants' motion.

Not only is disclosure of the alleged co-conspirators appropriate under the governing law, but it serves the additional purpose of fostering judicial efficiency. If left to guess at the

11

members of the alleged conspiracy, Defendants will have no choice but to object to hearsay statements, not being in a position to know whether the government contends they could meet the co-conspirator exception to the hearsay rule set out in Rule 801(d)(2)(E) of the Federal Rules of Evidence.

Counsel for Defendants have discussed with the government this request for a list of unindicted co-conspirators, but the government has refused to provide such a list.[2] Rather, the government stated that it would entertain questions from defense counsel – on a statement by statement basis – about the admissibility of any particular statement under the coconspirator hearsay exception set out in Rule 801(d)(2)(E) of the Federal Rules of Evidence. The government added that defense counsel could probably "guess" the individuals whom the government would allege to be unindicted co-conspirators, while supplying only a single example.

The government's proposed solution is inappropriate and improperly burdensome to Defendants. As an initial matter, the government has the burden of proof and it is the government's decision regarding what statements and evidence to introduce during its case-in-chief. It would be unreasonable to expect Defendants to comb through the tremendous amount of discovery in this case, including thousands of pages of government exhibits and hundreds of pages of online chats, to extract any and all statements made by possible unindicted co-conspirators, and then to notify the government of those statements to debate their possible inadmissibility. More importantly, Defendants should not be forced to identify statements that would be potentially harmful to them, and then ask the government how or whether it intends to

---

[2] Notably, the government also stated that it was not aware of any discovery device that would allow it to produce a simple list of unindicted co-conspirators. However, the United States Attorneys' Manual itself states that the names "can be supplied, upon request, in a bill of particulars." *United States Attorneys' Manual* § 9-11.130 (updated Dec. 2014).

introduce those statements at trial. After years of investigating the non-agency RMBS market, and more than eighteen months after indicting Defendants, the government knows the individuals it will allege to be unindicted co-conspirators. In fact, during a teleconference discussing this request, the government was able to quickly provide the name of one alleged unindicted co-conspirator and indicated that Defendants could likely "guess" the others. The Court should not permit the government to force the defense to play guessing games about the identity of co-conspirators or the admissibility of evidence that may be critical at trial. To avoid "trial by surprise or ambush," Mar. 9, 2017 Hr'g Tr. at 32:20-21, and the inevitable trial delay that will follow, the government should be compelled to produce a simple list of the alleged unindicted co-conspirators. This will allow Defendants an opportunity to adequately prepare a defense, and to effectively challenge any inadmissible hearsay statements.

In sum, all of the relevant factors weigh heavily in favor of requiring the government to disclose the identities of any alleged unindicted co-conspirators. The government's proposed solution, which would have Defendants flag harmful statements and ask the government how or whether it will seek to introduce those statements, is inappropriate and unfairly burdensome. Because the government's continued failure to identify the names of unindicted co-conspirators has severely prejudiced Defendants as they prepare for trial, the Court should direct the government to provide the requested information forthwith.

### III. The Government Should Be Precluded from Offering Evidence at Trial Subject to Defendants' Motions *in Limine* Due to Its Failure to Provide a Proffer.

The government should be precluded from offering any evidence at trial subject to Defendants' motions *in limine*, as the government has improperly withheld a proffer of the evidence subject to these motions since the Court instructed the government to provide it five months ago.

Defendants filed four motions *in limine* to preclude evidence the government was likely to introduce at trial:

| Docket Number | Description |
|---|---|
| 160 | Defendants' Motion In Limine To Exclude Evidence And Argument Regarding The Defendants' Compensation |
| 162 | Defendants' Motion In Limine To Preclude Evidence And References To The PPIP Program And Identities Of Passive Investors In The Funds Managed By The Counterparty Institutions |
| 163 | Defendants' Motion In Limine To Preclude Admissions Of FINRA Study Guides Absent Proper Foundation |
| 164 | Defendants' Joint Motion In Limine To Exclude Evidence That Defendants Acted As "Agents" Or "Brokers" Or Owed Any Agency Duties To Counterparties |

In its opposition briefs, the government confirmed its intention to introduce evidence subject to exclusion by these motions. *See* ECF No. 182 at 1; ECF No. 178 at 3; ECF No. 179, at 2; ECF No. 183 at 2.

At a hearing on September 2, 2016, the Court provided its initial views on the motions *in limine*, but stated that without more information about the evidence to be offered by the government, "it's difficult for me to assess the parties' disagreement . . . ." Hr'g Tr. at 42:17; *see also id.* at 45:14-15 ("Again, I don't know at the moment what the government has in mind."). Consequently, on October 26, 2016, the Court instructed that the government should provide an evidentiary proffer to facilitate a ruling on the motions:

> With regard to the motions in limine, . . . I will simply ask the government to assist me by providing me with a supplemental submission that includes a proffer of the evidence that the government wants to offer and that I'm being asked to preclude.

Oct. 26, 2016 Hr'g Tr. at 83:18-24. Remarkably, five months have passed and the government has still not proffered this information. Its failure to provide this proffer has prevented the Court from making a final ruling on critical motions *in limine*, and prejudiced Defendants as they

14

prepare for trial. *See Singh v. Caribbean Airlines Ltd.*, No. 13-20639-civ, 2014 WL 4101544, at *1 (S.D. Fla. Jan. 28, 2014) ("In resolving evidentiary disputes before trial, motions *in limine* avoid the need to 'unring the bell' once inadmissible evidence has been presented to the jury.").

Defendants have conferred with the government on this matter. Defendants requested the Court-ordered proffer during a telephonic meet-and-confer on February 27, 2017. In response, the government would say only that it was aware of its obligations and would aim to produce the proffer within two to three weeks. Over a month later, the government has still failed to provide any proffer of evidence. Today, the government indicated it would respond this week. Because the government's refusal to provide a proffer of evidence has prejudiced Defendants as they prepare for trial, and for the reasons detailed in the Defendants' motions *in limine*, the Court should preclude the government from offering any evidence subject to these motions.

## CONCLUSION

For the foregoing reasons, the Court should enter an order directing the government to provide the names of the individuals the government alleges are co-conspirators of Defendants and precluding the government from offering any evidence at trial of any bond trades the government has failed to identify in the Indictment or in its exhibit list, and any evidence subject to Defendants' motions *in limine*.

Dated: New York, New York
       March 28, 2017

Respectfully submitted,

GREENBERG TAURIG, LLP

By: /s/ Marc L. Mukasey
Marc L. Mukasey (CT29885)
Jeffrey B. Sklaroff (PHV08423)
Robert S. Frenchman (PHV08424)
200 Park Avenue
New York, New York 10166

PETRILLO KLEIN & BOXER LLP

By: /s/ Guy Petrillo
Guy Petrillo (CT19924)
Joshua Klein (PHV07748)
655 Third Avenue, 22nd Floor
New York, New York 10017
Telephone: (212) 370-0330

Telephone: (212) 801-6832
Facsimile: (212) 801-6400

*Attorneys for Michael Gramins*

Facsimile: (212) 370-0391

*Attorneys for Ross Shapiro*

ALSTON & BIRD LLP

By: /s/ Brett D. Jaffee
Brett D. Jaffe (PHV07701)
Michael L. Brown (PHV08372)
90 Park Avenue
15th Floor
New York, New York 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

*Attorneys for Tyler Peters*

**CERTIFICATION OF SERVICE**

I hereby certify that on March 28, 2017, a copy of foregoing Motion to Compel the Government to Produce Co-Conspirator Identities and to Preclude Evidence of Unidentified Trades and Evidence Subject to Defendants' Motions *in Limine* was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: New York, New York
March 28, 2016

       /s/ Marc L. Mukasey
Marc L. Mukasey (CT29885)
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: mukaseym@gtlaw.com