# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | |
| | : | |
| v. | : | S3 No. 15-cr-00155 (RNC) |
| | : | |
| ROSS SHAPIRO, | : | |
| MICHAEL GRAMINS and | : | March 29, 2017 |
| TYLER PETERS | : | |
| | : | |
| | : | |

## ROSS SHAPIRO'S MOTION IN LIMINE TO STRIKE SURPLUSAGE, OR, ALTERNATIVELY, ADMIT EVIDENCE RELATING TO NOMURA'S INTERNAL REVIEW, AND PRECLUDE EVIDENCE OR MENTION OF JESSE LITVAK'S INDICTMENT

Defendant Ross Shapiro respectfully moves this Court, pursuant to Rules 7(c)(1) and 7(d) of the Federal Rules of Criminal Procedure and other applicable law, to (i) strike the references to him contained in overt acts u. and x. of the Third Superseding Indictment as irrelevant and prejudicial surplusage or, alternatively, admit evidence of Nomura's internal review showing that Mr. Shapiro complied with Nomura's policies and procedures; and (ii) exclude evidence or mention of the January 2013 indictment of Jefferies trader Jesse Litvak.

WHEREFORE, for each of the foregoing reasons and those set forth in the accompanying Memorandum of Law, Mr. Shapiro respectfully requests that the Court grant this Motion *in Limine*.

Dated: New York, New York
       March 29, 2017

                              Respectfully submitted,

                              PETRILLO KLEIN & BOXER LLP

                              By:  /s/ Joshua Klein
                                   Joshua Klein (PHV07748)
                                   Guy Petrillo (CT19924)
                                   655 Third Avenue, 22nd Floor
                                   New York, New York 10017
                                   Telephone: (212) 370-0330
                                   Facsimile: (212) 370-0391
                                   *Attorneys for Ross Shapiro*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 29, 2017, a copy of foregoing Motion *in Limine* to Strike Surplusage, or, Alternatively, Admit Evidence Relating to Nomura's Internal Review, and Preclude Evidence or Mention of Jesse Litvak's Indictment was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Dated: New York, New York
        March 29, 2017

                                    /s/ Mirah Curzer
                                    Mirah Curzer (PHV08047)
                                    655 Third Avenue, 22nd Floor
                                    New York, New York, 10017
                                    Telephone: (212) 370-0330
                                    Facsimile: (212) 370-0391
                                    mcurzer@pkbllp.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | |
| | : | |
| v. | : | S3 No. 15-cr-00155 (RNC) |
| | : | |
| ROSS SHAPIRO, | : | |
| MICHAEL GRAMINS and | : | March 29, 2017 |
| TYLER PETERS | : | |
| | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF ROSS SHAPIRO'S MOTION**
**IN LIMINE TO STRIKE SURPLUSAGE, OR, ALTERNATIVELY,**
**ADMIT EVIDENCE RELATING TO NOMURA'S INTERNAL REVIEW,**
**AND PRECLUDE EVIDENCE OR MENTION OF JESSE LITVAK'S INDICTMENT**

PETRILLO KLEIN & BOXER LLP
655 Third Avenue, 22nd Floor
New York, New York 10017
Telephone: (212) 370-0330
Facsimile: (212) 370-0391
*Attorneys for Ross Shapiro*

## <u>TABLE OF CONTENTS</u>

**PAGE**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT.............................................................................................................................3

I.     The References To Mr. Shapiro In Overt Acts U. And X. Of The
Third Superseding Indictment Should Be Stricken As Irrelevant And
Prejudicial Surplusage .................................................................................... 3

       A.  The Applicable Law ................................................................................3

       B.  The Superseding Indictment Does Not Allege Overt Acts Knowingly
Undertaken By Mr. Shapiro In 2013 In Furtherance Of The Conspiracy .............4

       C.  Discussion .......................................................................................6

II.    If The Court Denies The Government's Application To Strike Surplusage And
Preclude The Government From Arguing That Mr. Shapiro Participated In The
Conspiracy in 2013 Then The Court Should Admit Evidence Of Nomura's Decision
Not To Discipline Mr. Shapiro For Any Purported Violations Of Its Policy .............. 9

       A.  Proffer Of The Government's Anticipated Proof Of Nomura's
Policies and Procedures ......................................................................10

            1.    The Compliance Policies And Trainings At Nomura
That Predated Litvak's Indictment................................................10

            2.    The Compliance Training Sessions In February 2013..............................11

       B.  Nomura's Post-Litvak Internal Review And Disciplinary Action ........................12

       C.  Discussion .......................................................................................12

III.   The Government Should Be Precluded From Offering Evidence Of, Or
Referring To, The Litvak Indictment.......................................................... 14

CONCLUSION.......................................................................................................16

i

# TABLE OF AUTHORITIES

CASES                                                                                                    PAGE(S)

*In re Dreier LLP,*
   No. 08-15051 (SMB) (Bankr. S.D.N.Y. Jan. 3, 2014)............................................................ 15

*In re Worldcom, Inc. Secs. Litig.,*
   No. 02 CIV 3288 DLC, 2005 WL 375315, at *9 (S.D.N.Y. Feb. 17, 2005) ........................... 15

*Levinson v. Westport Nat'l Bank,*
   No. 3:09-CV-269(VLB) (D. Conn. May 20, 2013) ................................................................ 15

*Lonabaueh v. United States,*
   179 F. 476 (8th Cir. 1910) ..................................................................................................... 4

*Ruffalo's TruckingServ., Inc. v. Nat'l Ben–Franklin Ins. Co.,*
   243 F.2d 949 (2d Cir.1957).................................................................................................... 15

*United States v. Fierro,*
   38 F.3d 761 (5th Cir. 1994) ................................................................................................... 4

*United States v. Fleschner,*
   98 F.3d 155 (4th Cir. 1996) ................................................................................................... 3

*United States v. Gilliam,*
   994 F.2d 97 (2d Cir. 1993)..................................................................................................... 15

*United States v. LaSpina,*
   299 F.3d 165 (2d Cir. 2002)................................................................................................... 3

*United States v. Lieberman,*
   637 F.2d 95 (2d Cir. 1980)............................................................................................. 4, 6, 7

*United States v. Martin,*
   228 F.3d 1 (1st Cir. 2000)...................................................................................................... 3

*United States v. Miller,*
   26 F. Supp.2d 415 (N.D.N.Y. 1998)..................................................................................... 3

*United States v. Nazzaro,*
   889 F.2d 1158, (1st Cir. 1989)............................................................................................... 4

*United States v. Olivieri,*
   740 F. Supp. 2d 414 (S.D.N.Y.2010).................................................................................... 16

*United States v. Scarpa,*
    913 F.2d 993 (2d Cir. 1990)............................................................................................. 3

*United States v. Shield,*
    Nos. Cr. 14-50058 (JLV), Cr. 14-50059 (JLV) (D.S.D. Jan. 13, 2015) ................................ 15

*Yates v. United States,*
    354 U.S. 298 (1957)........................................................................................................ 3

## RULES

Fed. R. Crim. P. 7(c)(1) ................................................................................................................3

Fed. R. Crim. P. 7(d) ...................................................................................................................3

F.R.E. 803(22)............................................................................................................................15

## PRELIMINARY STATEMENT

Mr. Shapiro respectfully submits this memorandum of law in support of his motion *in limine* to: (i) strike the references to him contained in overt acts u. and x. of the Third Superseding Indictment ("Indictment") as irrelevant and prejudicial surplusage or, alternatively, admit evidence of Nomura's internal review showing that Mr. Shapiro complied with Nomura's policies and procedures; and (ii) exclude evidence or mention of the January 2013 indictment of Jefferies trader Jesse Litvak.

The Indictment in this case does not allege any misconduct by Mr. Shapiro in 2013. In fact, we expect the evidence at trial to show that, in February 2013, Mr. Shapiro issued specific directives to the Nomura RMBS desk (following the issuance of such a directive by Nomura compliance personnel) to cease making misrepresentations in trade negotiations. Nevertheless, Mr. Shapiro is named in overt acts u. and x. in relation to a November 2013 trade involving a co-defendant. Mr. Shapiro is not alleged to have (i) made misrepresentations in connection with this trade, (ii) directed others to make misrepresentations in connection with this trade, or (iii) known that misrepresentations were made in connection with this trade. Furthermore, the specific conduct alleged as to Mr. Shapiro in overt acts u. and x. consist of a humorous remark that was made *after* the trade in question had been *agreed to*. In other words, to the extent the conspiracy alleged in Count One existed, the Indictment fails to allege that Mr. Shapiro's alleged comments were in furtherance of the alleged conspiracy. Importantly, neither the 3500 material (including grand jury transcripts of the government's cooperating witnesses) nor the discovery produced by the government to date contain any evidence of Mr. Shapiro's involvement in the alleged conspiracy during 2013. Furthermore, this trade occurred following specific directives by Mr. Shapiro to the Nomura RMBS desk to cease making misrepresentations in trade

negotiations, which are well documented in the 3500 material produced in this case. Thus, the references to Mr. Shapiro in overt acts u. and x. constitute irrelevant surplusage which risks confusing the jury regarding the scope of the alleged conduct as to Mr. Shapiro.

Should the Court deny Mr. Shapiro's request to strike surplusage, or should the government be permitted to argue that Mr. Shapiro continued to participate in the alleged conspiracy in 2013, Mr. Shapiro would request that the Court admit evidence offered by the defense that Nomura (i) reviewed the chat communications related to the trading and negotiations in the Indictment, (ii) did not impose disciplinary measures on anyone for engaging in such conduct prior to February 2013, and (iii) never disciplined Mr. Shapiro for violating Nomura's policies prior to or subsequent to February 2013. This evidence would be necessary to rebut any argument made without evidence Mr. Shapiro continued to participate in the alleged conspiracy in 2013.

Lastly, Mr. Shapiro also moves to preclude the government from introducing any evidence, or mention of, the January 2013 indictment of Jeffries trader Jesse Litvak. Any theoretical probative value such evidence might have (which we submit would be zero) would be substantially outweighed by the risk of inflaming and improperly swaying the jury by referring to separate charges against another individual for nearly identical conduct. The admission of such evidence would be rendered all the more inequitable by the fact that Litvak was acquitted of nine of the ten counts alleged, and as to the single count of conviction, a Rule 29 motion is pending.[1]

---

[1] Mr. Litvak's indictment is also irrelevant to the charges against Mr. Shapiro on grounds that there is no allegation Mr. Shapiro engaged in the alleged offense conduct in 2013. Nor is there any evidence that he did so in the chat communications or 3500 material produced by the government. In fact, the government's own witnesses will testify that, in February 2013, Mr. Shapiro specifically, and repeatedly, directed the RMBS desk to cease engaging in the alleged activity. Consequently, evidence of Mr. Litvak's indictment would be irrelevant to show Mr. Shapiro's knowledge and intent because the Indictment does not allege, nor has the government proffered, offense conduct by Mr. Shapiro following Mr. Litvak's indictment in January 2013.

**ARGUMENT**

I.     **The References To Mr. Shapiro In Overt Acts U. And X. Of The Third Superseding <u>Indictment Should Be Stricken As Irrelevant And Prejudicial Surplusage</u>**

A.     <u>The Applicable Law</u>

Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires that an indictment "shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Pursuant to Rule 7(d), "[t]he Court on motion of the defendant may strike surplusage from the indictment or information." This "rule introduces a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial." Fed. R. Crim. P. 7(d) Advisory Committee Note; *see also United States v. Miller*, 26 F. Supp.2d 415, 420 (N.D.N.Y.1998) ("The purpose of Rule 7(d) is to protect the defendant against prejudicial allegations of irrelevant facts"). The decision to strike language from an indictment is within the discretion of the trial court. *Id*. Motions to strike should be granted where, as here, "the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial." *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990).

It is well settled that to constitute an overt act, the overt act must be "knowing" and must include an affirmative act or an effort to achieve the object of the charged conspiracy. *Yates v. United States*, 354 U.S. 298, 311 (1957) (overt act must be "knowingly done" in furtherance of the conspiracy's object); *United States v. LaSpina*. 299 F.3d 165, 177 (2d Cir. 2002) ("to constitute an overt act for purposes of the statute of limitations the act must involve some affirmative conduct or deliberate omission on the part of [a conspirator]") (emphasis added); *United States v. Martin*, 228 F.3d 1, 16 (1st Cir. 2000); *United States v. Fleschner*, 98 F.3d 155

(4th Cir. 1996) (court correctly instructed jury that it must find that overt act "was knowingly committed" by a conspirator in furtherance of the conspiracy); *United States v. Fierro*, 38 F.3d 761, 768 (5th Cir. 1994) (overt act requirement for a money laundering conspiracy mandates that the overt act be made "knowingly"); *United States v. Nazzaro*, 889 F.2d 1158, 1164 (1st Cir. 1989) (only acts that evince a conspirator's "active participation" may qualify as overt acts for limitations purposes); *Lonabaueh v. United States*, 179 F. 476, 479 (8th Cir. 1910) (holding that "no act can be so regarded [as an overt act] unless it was a positive rather than a passive one, was the act of one or more of the conspirators, and was done to effect the object of the conspiracy"). Knowing conduct is deliberate and purposeful affirmative conduct.

Accordingly, "[a]n overt act is something done in pursuance of the conspiracy that tends to show a preexisting conspiracy and manifests the intent to commit the crime that is the object of the conspiracy."  Federal Criminal Jury Instructions, 2d ed. § 11.01 (1991) (Comment). Retrospective commentary relating to "a time since past does not appear to be intended to further an ongoing conspiracy."  *United States v. Lieberman*, 637 F.2d 95, 102-03 (2d Cir. 1980). Furthermore, "idle chatter" cannot be "in furtherance of the conspiracy."  *Id.*

## B.  The Superseding Indictment Does Not Allege Overt Acts Knowingly Undertaken By Mr. Shapiro In 2013 In Furtherance Of The Conspiracy

On March 7, 2017, a grand jury in the District of Connecticut returned the Indictment (Third Superseding Indictment) naming Messrs. Shapiro, Gramins and Peters as defendants. Like the prior three indictments in this case, the Indictment alleges as to all defendants one count of conspiracy, two counts of substantive securities fraud, and six counts of substantive wire fraud.  None of the substantive counts allege conduct in 2013.  Count One alleges a conspiracy "beginning in approximately 2009 and continuing through approximately 2013."  Ind. ¶ 32.  The Indictment alleges five overt acts in 2013 in furtherance of the alleged conspiracy.  The first of

these, overt act t., relates to an April 10, 2013 chat between a co-defendant and a representative

of Putnam.  Mr. Shapiro is not alleged to have had involvement in this chat or the related trade.

The other four 2013 overt acts relate to a November 22, 2013 trade involving a co-

defendant and counterparties QVT and TCW and read as follows:

> u.　　On or about November 22, 2013, GRAMINS, SHAPIRO
> and others chatted electronically with a representative of
> QVT. During the chat, GRAMINS misrepresented to QVT
> that a third-party seller offered JPMAC 2006-WMC1 A4 at
> 81-16 when, in truth, it had been offered at 80.
>
> v.　　On or about November 22, 2013, GRAMINS spoke by
> phone with a representative of TCW, during which
> GRAMINS misrepresented to TCW that GRAMINS had a
> 78.75 bid on JPMAC 2006-WMC1 A4, when, in fact,
> GRAMINS had been instructed by QVT to put in a bid at
> 80.00.
>
> w.　　On or about November 22, 2013, Salesperson M.R. and
> GRAMINS spoke by phone regarding the information that
> Nomura would provide to QVT about JPMAC 2006-
> WMC1 A4. Salesperson M.R. suggested that GRAMINS
> say "I'm sorry, I can't get them to you at 80" and to "keep
> it in a chat because if I [Salesperson M.R.] call, he [QVT's
> representative] is going to get suspicious."
>
> x.　　On or about November 22, 2013, GRAMINS, SHAPIRO,
> and others electronically chatted with QVT's representative
> about JPMAC 2006-WMC1 A4 and, after QVT's
> representative said that he does not "usually buy things
> when they get to 80," SHAPIRO responded saying, "80 is
> just a #!"

Mr. Shapiro is referenced in overt acts u. and x., both of which appear to refer to different

portions of the same chat with a representative of QVT, the putative buyer of a bond.  Overt act

u. alleges only that Mr. Shapiro engaged in a chat communication with a representative from

QVT.  There is no allegation that Mr. Shapiro made any misrepresentation, directed anyone to

make a misrepresentation, or that he was aware of the misrepresentation alleged in that overt act.

Indeed, Mr. Shapiro is not even alleged to have had any communications with the selling counterparty (TCW) in connection with this trade. Nor is Mr. Shapiro alleged to have participated in the telephone calls that occurred in relation to this trade. *See e.g.,* overt acts v. and w. (referring to communications via phone).

Crucially, the comment Mr. Shapiro is alleged to have made in overt act x. occurred ***after*** the trade was ***agreed to***. At 21:51:26 QVT representative J.W.[2] stated "shoot over the ticket." GX 29D (NSISEC00104606-4613) at 21:51:26. Mr. Shapiro then commented at 21:52:07, that "i [sic] have no idea what bond . . . and what sitch [sic] . . . you guys are discussing." GX 29D (NSISEC00104606-4613) at 21:51:07-21:52:15. Then, in the middle of some banter relating to drinking, Mr. Shapiro stated "80 is just a #!" at 21:52:35. The Indictment contains no discussion, explanation, or allegation of what Mr. Shapiro allegedly meant by the phrase "80 is just a #!" Nor does the Indictment allege that Mr. Shapiro facilitated, or had knowledge of, any misrepresentations made by others, in 2013. None of the evidence or interview reports disclosed by the government show any such thing.

Given these circumstances, any claim that Mr. Shapiro's comment could have possibly been made in furtherance of the alleged conspiracy is unsustainable.

### C.    Discussion

The references to Mr. Shapiro in overt acts u. and x. do not allege any knowing acts by Mr. Shapiro in furtherance of the alleged conspiracy. There is no allegation that Mr. Shapiro "knowingly committed" any act in furtherance of the conspiracy in 2013. As noted, the comment by Mr. Shapiro that is referenced in overt act x. was made *after* the trade in question was *agreed to*. As the Second Circuit has instructed, such "retrospective" commentary relating to "a time since past does not appear to be intended to further an ongoing conspiracy." *See*

*Lieberman,* 637 F.2d 95, 102-03.  To the contrary, Mr. Shapiro's comment referenced in overt

act x. constitutes precisely the type of "idle chatter" that does *not* constitute a co-conspirator

statement in furtherance of the conspiracy.  *Id.*

    The references to Mr. Shapiro in these overt acts are rendered all the more misleading by

the government's acknowledgment to the Court that Mr. Shapiro specifically directed the traders

on the RMBS desk *not* to make misrepresentations to clients in trade negotiations after learning

about the Litvak indictment in late January 2013.  *See* April 6, 2016 Tr., p. 71 (government

explaining that following the indictment of Jesse Litvak and an ensuing compliance training at

Nomura, "Mr. Shapiro then went back, held an all hands on deck meeting  . . . on the desk and

said, we shouldn't really be doing this because Litvak has been charged with this conduct.").

And, the government has produced *no* evidence reflecting any alleged offense conduct by Mr.

Shapiro in 2013.  To the contrary, the 3500 material produced by the government shows

precisely the opposite.  For example, immunized witness and trader E.H. testified in the grand

jury that following the Litvak indictment Mr. Shapiro instructed traders attending a meeting to

"only make true statements" in negotiations going forward.  6/4/2014 E.H. GJ Tr. at 60.  In a

prior meeting, on March 12, 2015 E.H. informed the government that Mr. Shapiro told him "to

be careful moving forward when trading bonds and to use the phrase 'I can sell a bond to you

(client) at this price' as opposed to 'I bought the bond at this price.'"  E.H. further underscored

that Mr. Shapiro told him that "you must tell the truth to clients."  3/12/2015 Report of E.H.

Interview.

    Similarly, witness and trader J.F. informed the government that, following Mr. Litvak's

indictment, Mr. Shapiro admonished the RMBS desk that "there's going to be no more

misrepresentations."  6/4/2015 JF GJ Tr. at 62-65.  J.F. also conveyed to the government that, on

---

[2] This memorandum utilizes the naming convention adopted in the publicly filed Indictment.

one particular occasion in 2013 he expressed concern to Mr. Shapiro about a misrepresentation that had been made in connection with a trade negotiation.  According to J.F., after speaking with Mr. Shapiro he "decided not to complete the trade."  9/1/2015 Report of J.F. Interview.

     Given the absence of any allegation in the Indictment that Mr. Shapiro knowingly acted to further the conspiracy in November 2013, the lack of evidence in the discovery materials suggesting otherwise, the 3500 material indicating Mr. Shapiro specifically admonished traders in February 2013 *not* to make misstatements to clients, and the government's admission of Mr. Shapiro's admonition in February 2013 to traders on the desk not to misrepresent, the reference to Mr. Shapiro in the 2013 overt acts is not only irrelevant, but also highly prejudicial and misleading.  These references are not only irrelevant idle chatter regarding a trade that had already been agreed to, but they misleadingly and unfairly suggest that Mr. Shapiro continued to participate in the alleged conspiracy in 2013 in the face of the government's evidence to the contrary.

     The undue prejudice that would result from allowing the government to retain these references in the overt acts is considerable.  It is anticipated that the alleged 2013 conduct will form the basis for the government's application to admit into evidence the fact that Litvak was indicted in late January 2013, and that Mr. Litvak's indictment prompted compliance training meetings at Nomura in February 2013 at which Nomura traders and sales personnel were instructed not to make misrepresentations to clients.  *See* April 6, 2016 Tr., p. 71, ln 15-18 (government proffer regarding anticipated trial evidence about Mr. Litvak's indictment and ensuing training at Nomura).  The government will undoubtedly argue that defendants' involvement in the alleged 2013 trades, which post-date Mr. Litvak's indictment and the Nomura compliance trainings, underscore that they acted knowingly and willfully.  Given the absence of

any evidence that Mr. Shapiro participated in the alleged conspiracy in 2013, the government should not be permitted to argue that he acted with knowledge of the wrongfulness of his actions (or those of others) on the basis of the irrelevant and improper references to Mr. Shapiro in the 2013 overt acts, because to do so would unfairly prejudice Mr. Shapiro in the extreme.[3]

If the Court is disinclined to rule on this application in advance of trial and prefers to defer its ruling until it can assess the evidence offered by the government on this point, Mr. Shapiro would respectfully request that the Court refrain from mentioning Mr. Shapiro's comment, as alleged, in the 2013 overt acts, as alleged, should it read the Indictment to the jury, and that the government be instructed not to claim, in its opening statement, that Mr. Shapiro continued to participate in the conspiracy in 2013.

## II.   If The Court Denies Mr. Shapiro's Application To Strike Surplusage And Preclude The Government From Arguing That Mr. Shapiro Participated In The Conspiracy In 2013 Then The Court Should Admit Evidence Of Nomura's Decision Not To <u>Discipline Mr. Shapiro For Any Purported Violations Of Its Policy</u>

On March 23, 2017, the government produced an amended witness list identifying N.C., a member of Nomura's compliance department, as a potential witness.  The government also produced 3500 material pertinent to a recent interview the government conducted of N.C., as well as certain additional government exhibits.  Based on the foregoing it appears the government plans to adduce evidence at trial that the offense conduct in 2013 contravened Nomura's internal policies and procedures as articulated in a February 2013 Nomura compliance meeting.

Should the Court permit the government to retain references to Mr. Shapiro in the 2013 overt acts, as alleged, or argue to the jury that Mr. Shapiro remained in the conspiracy in 2013, in

---

[3] For these same reasons the government should not be permitted to refer to this portion of the chat communication during the trial; it is irrelevant, prejudicial, and invites rank speculation by the jury.

the face of Nomura compliance's express directive in February 2013 that making misrepresentations in trade negotiations contravenes Nomura policy, then Mr. Shapiro would intend to offer responsive evidence that Nomura, following the *Litvak* indictment, retained outside counsel to review the chat communications that form the basis for the allegations in the Indictment and refrained from taking any disciplinary action against Mr. Shapiro at any time following its review.[4]  As discussed below, the admission of this responsive evidence would be necessary to rebut anticipated argument by the government, without evidence, that Mr. Shapiro allegedly violated Nomura's policies and procedures following the February 2013 directive from compliance not to misrepresent information to clients.

### A.   Proffer Of The Government's Anticipated Proof Of Nomura's Policies And <u>Procedures</u>

#### 1.   The Compliance Policies And Trainings At Nomura That Predated <u>Litvak's Indictment</u>

It is anticipated the government will seek to introduce certain of Nomura's policies and procedures that were in place prior to February 2013.  *See e.g.,* GX 156 (NSISEC00084273-4277) at 6 (a May 2012 compliance training document providing, among other things, that the "improper use of electronic platforms include but is not limited to . . . omission of material facts or making untrue/ misleading statements.").  It appears the government may seek to introduce additional such evidence, including that Nomura's compliance manual:

- "prohibits manipulative, fraudulent and deceptive practices in connection with either the purchase or sale of securities,"

- states that employees should not "take unfair advantage of anyone through concealment of material information, misuse of confidential information, misrepresentation of material facts, or any other unfair dealing practice,"

---

[4] Given the government's pending investigation, and the fact that charges had been filed against Mr. Litvak, Nomura placed Mr. Shapiro and certain others under "heightened supervision" and later on administrative leave. Additionally, the vesting of certain deferred compensation payable to Mr. Shapiro was delayed and has not yet been paid.  However, Mr. Shapiro was not terminated for cause and remains eligible to receive his deferred compensation.

- states that "all communications over the firm's electronic systems must be truthful and in good taste," and

- states that communications "must be truthful, balanced and in good taste, must not omit material facts and must not use language that is misleading, promising or exaggerated."

*See* 3/4/2017 Report of N.C. Interview (Nom_USAOCT_006228-6236) at 7-8.

Similarly, the government may introduce evidence that Nomura's Code of Ethics contains language advising employees that they must not "take unfair advantage of anyone through manipulation, concealment, abuse of confidential information, misrepresentation of material facts, or any other unfair-dealing practice." *See id*. at 8.

### 2.     The Compliance Training Sessions In February 2013

It is also anticipated the government will seek to admit evidence that, following Mr. Litvak's indictment in January 2013, Nomura compliance personnel conducted training sessions for the fixed income traders and salespeople on February 5 and February 7, 2013. *See* 3/4/2017 Report of N.C. Interview (Nom_USAOCT_006228-6236) at 6. The government intends to elicit testimony about a document that was provided to attendees at these compliance sessions that admonishes Nomura employees not to lie. *See* NSISEC001094790 (stating "First and foremost for everyone <u>DO Not Lie</u>") (emphasis in original). It is anticipated that the government will also elicit testimony that this document constituted a *reiteration* of *preexisting* Nomura policy rather than a *new* policy or policy interpretation. *See e.g.,* 3/4/2017 Report of N.C. Interview (Nom_USAOCT_006228-6236) at 6 ("the actions Litvak was accused of were a violation of Nomura's code of ethics and compliance policy" and "there was no change in compliance immediately after Litvak's indictment because his actions were against Nomura's policies and should not have been occurring.").

### B.    <u>Nomura's Post-Litvak Internal Review And Disciplinary Action</u>

It is our understanding that, following Mr. Litvak's indictment, Nomura, through outside counsel, undertook a comprehensive review of 863 trades and developed concerns about 146 of those trades (17 of which involved Mr. Shapiro).  Nomura did not identify a single problematic trade involving Mr. Shapiro that occurred in 2013, the period following Mr. Litvak's indictment.

Nomura did *not* terminate *any* trader or salesperson for engaging in conduct similar to that alleged in the Indictment during the period *prior* to Mr. Litvak's indictment in 2013, despite having identified the very conduct alleged in the Indictment, which the government now contends is criminal.  Nomura *did* terminate certain individuals "for cause" as a result of their involvement in conduct similar to that alleged in the Indictment in the period *after* Mr. Litvak's indictment and Nomura's February 2013 compliance training sessions at which personnel were instructed "First and foremost <u>DO Not Lie</u>."

But, as to Mr. Shapiro, Nomura did *not* ever take such disciplinary action concerning either the alleged 2013 trades or any trading activity that post-dated Mr. Litvak's indictment and the February 2013 compliance training sessions.

### C.    <u>Discussion</u>

If the Court permits the government to retain mention of Mr. Shapiro in the 2013 overt acts, as alleged, or argue to the jury that Mr. Shapiro continued to participate in the alleged conspiracy in 2013, in the face of the express directive from Nomura compliance in February 2013 that making misrepresentations to clients in trade negotiations would violate its policy, then Mr. Shapiro must be permitted to introduce responsive evidence that he never violated Nomura's policies and procedures.  This evidence would consist of testimony from a witness who participated in, or was aware of, Nomura's internal review, and Nomura business records.

The relevance of this evidence is clear.  The fact that Nomura did not terminate *anyone* for participating in the alleged conduct prior to Mr. Litvak's indictment tends to show that such conduct was *not* proscribed by Nomura's policies and procedures on their face or as applied. Moreover, the fact that Nomura *did* discipline individuals who were involved in the alleged conduct in the period *following* Mr. Litvak's indictment and the February 2013 training sessions, tends to show that Nomura's internal policies and procedures (or their interpretation) with regard to such conduct *changed*.  The fact that Mr. Shapiro was *not* disciplined in connection with the charged 2013 trades shows that, in Nomura's view, Mr. Shapiro did *not* violate Nomura's revised policies and procedures.

Accordingly, it is only fair that if the government is permitted to introduce evidence of Nomura's February 2013 directive to support its argument that Mr. Shapiro knowingly and willfully violated the law (because he presumably violated that directive), Mr. Shapiro should be allowed to respond to that argument with evidence showing that Nomura itself, following the post-Litvak review conducted by outside counsel (who was privy to the same evidence available to the government) did *not* take the view that Mr. Shapiro ever violated that directive.  This is particularly so given that it is inconceivable the government would even attempt to argue Mr. Shapiro's alleged offense conduct continued into 2013, in contravention of the February 2013 compliance directive, were he the sole defendant at trial.

Mr. Gramins and Mr. Peters take the position that Nomura's post-Litvak separation decisions are inadmissible.  Mr. Gramins and Mr. Peters submit that Nomura's true reasons for separating from any employee are, in general, unknowable.  Faced with a government investigation into its own conduct, Nomura's stated reasons for separating from an employee may be self-serving.  Here, in addition, Nomura's separation decisions are irrelevant to the issues

at trial, outside the period of the charged conspiracy, and highly prejudicial. Accordingly, Mr. Gramins and Mr. Peters object to the admission of such evidence.

We would also note, that, to the extent the Court grants Mr. Shapiro's application to strike, as surplusage, mention of Mr. Shapiro in the 2013 overt acts, and to preclude the government from asserting any involvement by Mr. Shapiro in the conduct alleged therein to the jury, there would be no need for Mr. Shapiro to offer evidence relating to Nomura's internal review and the consequences that followed.

## III.   The Government Should Be Precluded From Offering Evidence Of, Or Referring <u>To, The Litvak Indictment</u>

Any evidence or mention of the charges against Mr. Litvak should be precluded at trial on grounds that such evidence is irrelevant and highly prejudicial. With regard to the defendants' conduct that is alleged to have predated Mr. Litvak's indictment, the only conceivable relevance of the charges against Mr. Litvak is the shock they provoked within Nomura (and the entire RMBS industry), which reflects that the industry had not perceived such conduct to be criminal prior to that point. The charges against Mr. Litvak are not otherwise probative of any facts in dispute regarding alleged conduct that predated Mr. Litvak's indictment.

The charges against Mr. Litvak are similarly irrelevant to the allegations pertaining to conduct that post-dated Mr. Litvak's indictment. The charges levied against Mr. Litvak reflect only the *government's* view of whether the alleged conduct is criminal, not whether such conduct is *actually* criminal. Indeed, the recent *Litvak* verdict, in which the jury acquitted Mr. Litvak of nine of ten counts alleged, offers a strikingly different view than the one reflected by the government's charging decision. Consequently, the charges against Mr. Litvak are not relevant

to the defendants' knowledge or intent or any good faith defense they may assert.[5]  Further, as Courts have long recognized, the charges against Mr. Litvak would, in any event, constitute inadmissible hearsay.  *See e.g., Ruffalo's TruckingServ., Inc. v. Nat'l Ben–Franklin Ins. Co.,* 243 F.2d 949, 953 (2d Cir.1957) ("The indictment, since it was only hearsay, was clearly inadmissible for any purpose."); *In re Dreier LLP, No.* 08-15051 (SMB), 2014 WL 47774, at *10 (Bankr. S.D.N.Y. Jan. 3, 2014); *Levinson v. Westport Nat'l Bank,* No. 3:09-CV-269(VLB), 2013 WL 2181042, at *2 (D. Conn. May 20, 2013)*; United States v. Olivieri,* 740 F. Supp. 2d 414, 418–19 (S.D.N.Y. 2010); *In re Worldcom, Inc. Secs. Litig.,* No. 02 CIV 3288 DLC, 2005 WL 375315, at *9 (S.D.N.Y. Feb. 17, 2005)*; cf.* F.R.E. 803(22) (providing that judgments of conviction can constitute exceptions to the hearsay rule when offered for purposes other than impeachment only if "*the judgment was against the defendant*" not third parties) (emphasis added).[6]

Moreover, the fact that another RMBS trader was charged with the same crimes based on nearly identical conduct – even with a limiting instruction – would invariably lead to speculation among jurors as to whether or not Mr. Litvak was convicted.  Such speculation carries a real risk that the jury would conclude that Mr. Litvak was convicted and, therefore, the defendants must also have committed a crime.  *See e.g., United States v. Shield,* Nos. Cr. 14-50058 (JLV), Cr. 14-50059 (JLV), 2015 WL 163413, at *4 (D.S.D. Jan. 13, 2015) (denying the government's application for the joinder of two indictments because "the factual allegations which support the

---

[5] Admission of such evidence would be particularly prejudicial to Mr. Shapiro who does not even intend to assert a good faith (or knowledge or intent based) defense with regard to the alleged 2013 conduct that post-dated Mr. Litvak's indictment.

[6] Furthermore, Courts are particularly sensitive to the prejudice that attends the admission of a defendant's prior conviction.  *See e.g. United States v. Gilliam,* 994 F.2d 97, 100 (2d Cir. 1993) ("This Court has noted that prejudicial taint can, in the context of admissible evidence, be caused by the introduction of a defendant's prior conviction, and has protected against that taint when necessary.").  Here, similar concerns exist with respect to the

separate indictments is unduly prejudicial and likely to confuse and mislead the jury if presented during the trial of the separately indicted cases.").

Evidence of Mr. Litvak's indictment would also convey to the jury that the conduct alleged in this case is, in general, prosecutable criminal conduct because the jury would learn that the government has filed criminal charges in a separate, unrelated matter involving identical conduct.  This would create the risk that the jury would conclude that such conduct is likely illegal on the improper basis that the government would not *repeatedly* allege criminality with respect to identical conduct if there were a question about its illegality.  Accordingly, if the government is permitted to introduce evidence relating to the *Litvak* case, the defendants, in fairness, should be entitled to offer evidence relating to the outcome of that case, in which Mr. Litvak was acquitted of nine of ten counts alleged and in which a Rule 29 motion is pending as to the single count of conviction.

## CONCLUSION

For the foregoing reasons, Mr. Shapiro respectfully requests that the Court grant his motion to: (i) strike surplusage from the Indictment and order the government not to argue to the jury involvement by Mr. Shapiro in the 2013 conduct alleged therein or, alternatively, permit Mr. Shapiro to introduce responsive evidence in the form of the disciplinary measures imposed by Nomura (or the lack thereof) following its internal investigation as proof that Mr. Shapiro did not violate the February 2013 compliance directive; and (ii) preclude evidence or mention of Mr. Litvak's indictment at trial.

---

prejudice that would flow from the admission of evidence of Mr. Litvak's indictment (consisting of unproven allegations) without the countervailing relevance that evidence of a defendant's prior conviction might have.

Respectfully submitted,


PETRILLO KLEIN & BOXER LLP

By:  /s/ Joshua Klein
      Joshua Klein (PHV07748)
      Guy Petrillo (CT19924)
      655 Third Avenue, 22nd Floor
      New York, New York 10017
      Telephone: (212) 370-0330
      Facsimile: (212) 370-0391
      *Attorneys for Ross Shapiro*

**<u>CERTIFICATION OF SERVICE</u>**

I hereby certify that on March 29, 2017, a copy of foregoing Motion *in Limine* to Exclude Evidence and Argument Regarding the Defendants' Compensation was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Dated: New York, New York
         March 29, 2017

         /s/ Mirah Curzer
        Mirah Curzer (PHV08047)
        655 Third Avenue, 22nd Floor
        New York, New York, 10017
        Telephone: (212) 370-0330
        Facsimile: (212) 370-0391
        mcurzer@pkbllp.com