# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | No. 15-cr-00155 (RNC) |
| | : | |
| ROSS SHAPIRO, | : | |
| MICHAEL GRAMINS and | : | |
| TYLER PETERS | : | |
| | : | May 29, 2017 |
| | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS THE INDICTMENT ON DUE PROCESS GROUNDS

PETRILLO KLEIN & BOXER LLP
655 Third Avenue, 22nd Floor
New York, New York 10017
Telephone: (212) 370-0330
*Attorneys for Ross Shapiro*

GREENBERG TRAURIG LLP
200 Park Avenue
New York, NY 10166
Telephone:  (212) 801-9200
*Attorneys for Michael Gramins*

ALSTON & BIRD LLP
90 Park Avenue, 15th Floor
New York, NY 10016
Telephone: (212) 210-9400
*Attorneys for Tyler Peters*

BRAFMAN & ASSOCIATES, P.C.
767 Third Avenue, 26th Floor
New York, NY 10017
Tel: (212) 750-7800
*Attorneys for Tyler Peters*

This is a regulatory case masquerading as a criminal case.  It should be dismissed as a fundamental violation of Due Process.

Now that the evidence is nearly at a close, Defendants Ross Shapiro, Michael Gramins, and Tyler Peters move to dismiss the Indictment under the Due Process Clause of the Fifth Amendment of the United States Constitution on the ground that they lacked fair notice that their conduct was proscribed by the federal securities fraud and wire fraud statutes.

## I.   There Is No Precedent, Other Than *Litvak*, For This Prosecution

Until Jesse Litvak was indicted by a grand jury in this District in January 2013 – during the pendency of the conduct charged in this case – no criminal enforcement authority had ever charged violations of law arising from bilateral price negotiations between sophisticated parties, each armed with the same information about the product subject to the price negotiations.  That is why former Nomura trader Caleb Chao testified that the *Litvak* case was "shocking," a major development of great concern to him; until that point in time, it had never occurred to him (or to any of the other Nomura traders, as they also testified) that they were committing a crime by engaging in the negotiation tactics at issue.  **No** Nomura-associated witness in this case has testified that he thought his non-agency RMBS price negotiation tactics were unlawful at the time of his conduct.  **No** confession is in evidence.  **No** admission of wrongdoing by any Defendant is in evidence.

Moreover, numerous individuals similarly situated to Defendants throughout the industry have been investigated post-*Litvak*, with the SEC entering into agreements or charging some.[1] Only those whose institutions sent wires into this District have faced criminal prosecution.

---

[1] *See, e.g.*, Complaint, *SEC v. Kee Chan*, No. 17 Civ. 3605, 2017 WL 2062861 (S.D.N.Y. May 15, 2017); Complaint, *SEC v. James H. Im*, No. 17 Civ. 3613, 2017 WL 2062863 (S.D.N.Y. May 15, 2017); Order Instituting Proceedings, *In the Matter of Nicholas M. Bonacci*, Exchange Act Release No. 78932, 2016 WL 5369311 (Sept. 26, 2016); Order

## II.  The Holding in *Weimert* Is Dispositive Concerning the Absence of Notice

How could Defendants have been on notice that their conduct was legally offensive when the Seventh Circuit Court of Appeals, in reviewing the issue of materiality in bilateral price negotiations between sophisticated parties just over a year ago in *United States v. Weimert*, 819 F.3d 351 (7th Cir. 2016), held that under the wire fraud statute, statements in such negotiations cannot be material as a matter of law?  In other words, Defendants and the former Nomura witnesses who testified that they never considered the legality of the price negotiations tactics could **not** have been on notice of illegality.  As *Weimert* explains, such tactics are not material and therefore not unlawful.

Given the evidence adduced by the government at trial, the Court's analysis in *Weimert* is directly on point:

> Buyers and sellers negotiate prices and other terms.  To state the obvious, they will often try to mislead the other party about the prices and terms they are willing to accept.  Such deceptions are not criminal.
>
> To take a simple example based on price, suppose a seller is willing to accept $28,000 for a new car listed for sale at $32,000.  A buyer is actually willing to pay $32,000, but he first offers $28,000.  When that offer is rejected and the seller demands $32,000, the buyer responds: "I won't pay more than $29,000." The seller replies: "I'll take $31,000 but not a penny less."  After another round of offers and demands, each one falsely labeled "my final offer," the parties ultimately agree on a price of $30,000.  Each side has gained from deliberately false misrepresentations about its negotiating position.  Each has affected the other side's decisions.  If the transaction involves interstate wires, has each committed wire fraud, each defrauding the other of $2,000?  Of course not.  But why not?
>
>  . . .
>
> The  .  .  .  answer is that negotiating parties, and certainly the sophisticated businessmen in this case, do not expect complete

---

Instituting Proceedings, *In the Matter of Edwin K. Chin*, Exchange Act Release No. 78585, 2016 WL 4363882 (Aug. 16, 2016).

> candor about negotiating positions, as distinct from facts and promises of future behavior. Deception about negotiating positions—about reserve prices and other terms and their relative importance—should not be considered material for purposes of mail and wire fraud statutes.

819 F.3d at 357-58.  The Court further stated:

> In commercial negotiations, it is not unusual for parties to conceal from others their true goals, values, priorities, or reserve prices in a proposed transaction. When we look closely at the evidence, the only ways in which Weimert misled anyone concerned such negotiating positions.  He led the successful buyer to believe the seller wanted him to have a piece of the deal.  He led the seller to believe the buyer insisted he have a piece of the deal.  All the actual terms of the deal, however, were fully disclosed and subject to negotiation.  There is no evidence that Weimert misled anyone about any material facts or about promises of future actions.

*Id.* at 354; *see also id.* at 370 ("Weimert's dealings in selling Chandler Creek were sharp and self-interested, but they did not amount to wire fraud. . . .  [A]ll terms of the deal were on the table.  IDI might have been able to secure a better deal if it had known the underlying priorities of prospective buyers and Weimert, but that is . . . a matter for the corporate boardroom and civil law, not a federal criminal trial.").

Consistent with fair notice principles, again, how can the instant case be submitted to a jury in view of the utter absence of evidence that anyone believed the conduct was unlawful at the time and where a distinguished Court of Appeals has explained that it is not unlawful?  *See Weimert*, 819 F.3d at 358 ("[W]e know of no other case in which a court has found that deceptive statements about negotiating positions amounted to a scheme to defraud under the mail or wire fraud statutes.  This absence is consistent with more general understandings in the

3

law.").[2]

The significance of *Weimert* in light of the evidence in this case is made even clearer when the testimony of the government's witnesses is considered. The witnesses testified that misrepresentations were virtually omnipresent in the non-agency RMBS market. To be sure, the government implicitly endorsed the witnesses' self-serving distinctions between their own misrepresentations and those charged here. But how does the evidence prove that Defendants made or "must have made" these ephemeral distinctions? It does not. More to the point, is it fair to hold the Defendants to a standard announced by this District's United States Attorney's Office when the evidence at trial has shown that no witness believed that Defendants' conduct was criminal?   Indeed, even the sole cooperating witness who has pleaded guilty to the conspiracy charged in the Indictment – Frank Dinucci – testified at trial that at the time he engaged in the challenged negotiating tactics, he did not believe they were illegal. 5/9/17 Trial at 11:27:29-33; 13:17:07-13; 13:31:38-46; 13:35:56-58; 13:45:30-35. Mr. Dinucci has been consistent in this regard.[3] In his plea allocution in this District, Mr. Dinucci did not admit to knowing he had crossed a line of legality when engaging in the challenged tactics.

In view of *Weimert* and the evidence, this case must be dismissed as a violation of Due Process.

---

[2] More than a year ago, during oral argument on Defendants' original motion to dismiss the Indictment, the Court asked specific questions of the government about how to distinguish between mere haggling and the commission of a crime in the context of price negotiations between a buyer and a seller, 4/6/16 Hr'g Tr. at 24-25, questions that were addressed by the Seventh Circuit shortly thereafter in *Weimert*. The government's failure to adduce evidence at trial of material violations of the securities and wire fraud statutes only confirms the Court was correct in its concerns and that there is no meaningful distinction that can be drawn between this case and *Weimert*.

[3] Counsel for the government clearly recognizes that the Nomura traders did not believe their conduct was illegal at the time, but has sought to play down the witnesses' lack of willfulness at trial by formulating their questions in more general terms:  "Mr. Feely, did you ever think about this practice in legal terms?" and to Mr. Chao, "Did you think about it in terms of lawfulness?"

4

### III. The Government Is Also Seeking Improperly To Prove The Case Based On An Improper Standard

Worse, although the Second Circuit in *United States v. Litvak,* 808 F.3d 160, 190 (2d Cir. 2015), reiterated that the government must prove intent to violate the law to sustain securities fraud charges, and Judge Hall instructed the jury at the second *Litvak* trial accordingly, the government here seeks to show *mens rea* based on violations of FINRA standards and Nomura Compliance manual provisions, none of which require an intent to violate the laws cited in this case. Consistent with this approach, the government has elicited testimony from multiple witnesses that "lying is wrong" with the apparent aim to obtain a conviction based on a finding that Defendants must have known their conduct was generally "wrong." But lying is not always legally wrong – for example, it is not legally wrong when, as here, it is not material. *See Weimert*, 819 F.3d at 354, 357. And, Judge Kozinski of the Ninth Circuit Court of Appeals has identified dozens of contexts in which lying is not unlawful. *See United States v. Alvarez*, 658 F.3d 666, 673, 674-75 (9th Cir. 2011) (Kozinski, C.J., concurring in denial of reh'g *en banc*).

Of less importance – because the entire effort to prove criminal intent by reference to Compliance manuals is defective – the government's evidence regarding the Compliance manuals itself lacks evidentiary force. No witness has testified to reviewing the Nomura Compliance manuals concerning customer communications at the time of the charged conduct; and no Compliance professional has testified. The Court will recall that Jonathan Raiff testified he merely skimmed the manual, and Mr. Chao testified he merely clicked through the on-line Compliance module. There is no evidence that Defendants acted differently from Mr. Raiff or Mr. Chao – that is, engaged in the internal Compliance process as a ministerial exercise.

The same is true of the government's evidence regarding industry exams and licenses administered by FINRA. While the former Nomura traders testified that they had at least two of

these licenses (Series 7 and 63), they described the exams as focusing generally on traders'
"ethical obligations."  To the extent any witness mentioned references in the FINRA exams to
statutes of broad applicability, no witness testified he understood from these references that his
participation in the challenged negotiation tactics was unlawful.  According to the evidence in
this case, there was no standard imposed or taught through these exams that informed the
Nomura traders – or that would have informed Defendants – that the negotiation tactics at issue
amounted to criminal violations.

Additionally, the evidence at trial has demonstrated that Defendants' negotiation
practices were commonplace in the non-agency RMBS market, were widely known to Nomura
Trading and Nomura Sales alike (at the Managing Director level), and, as Defendants knew,
Nomura had the ability to monitor and detect Defendants' conduct.  In the face of this evidence,
the government's purposeful attempts to blur the line between conduct that could be the basis of
disciplinary or employment action and conduct that is criminal is fundamentally unfair.

This Court has already remarked concerning the danger of criminal prosecution by
reference to vague aspirational notions of wrongfulness.  The Court has stated, correctly, that the
Defendants are not on trial for violating those aspirational precepts.  The Court has also
recognized, rightly, that due process does not permit the government to use the criminal justice
system to draw lines; rather, the lines have to be clear **before** the conduct is committed.

Accordingly, now that the government's case is nearly at an end, we respectfully move this Court to protect Defendants from a gross abuse of criminal process by dismissing the Indictment forthwith.

Respectfully submitted,

PETRILLO KLEIN & BOXER LLP

By:  /s/ Guy Petrillo
Guy Petrillo (CT19924)
Joshua Klein (PHV07748)
Amy Lester (PHV08919)
655 Third Avenue, 22nd Floor
New York, New York 10017
Telephone: (212) 370-0330
Facsimile:  (212) 370-0391
gpetrillo@pkbllp.com
*Attorneys for Ross Shapiro*

GREENBERG TRAURIG LLP

By:  /s/ Marc L. Mukasey
Marc L. Mukasey (PHV07694)
Jeffrey B. Sklaroff (PHV08423)
Greenberg Traurig LLP
200 Park Avenue
New York, NY 10166
Telephone:  (212) 801-9200
Facsimile:  (212) 801-6400
mukaseym@gtlaw.com
*Attorneys for Michael Gramins*

ALSTON & BIRD LLP

By:  /s/ Brett D. Jaffe
Brett D. Jaffe (PHV07701)
Michael Brown (PHV08372)
Joseph G. Tully (PHV07702)
90 Park Avenue, 15th Floor
New York, NY 10016
Telephone: (212) 210-9400
Facsimile:  (212) 210-9444
Brett.Jaffe@alston.com
*Attorneys for Tyler Peters*

7

BRAFMAN & ASSOCIATES, P.C.

By: <u>/s/ Alex Spiro</u>
Alex Spiro, Esq. (PHV08071)
767 Third Avenue, 26th Floor
New York, NY 10017
Telephone: (212) 750-7800
Facsimile: (617) 755-4555
aspiro@braflaw.com
*Attorney for Tyler Peters*

## CERTIFICATION OF SERVICE

I hereby certify that on May 29, 2017, a copy of foregoing Memorandum of Law in Support of Defendants' Motion to Dismiss the Indictment on Due Process Grounds was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Dated: New York, New York
       May 29, 2017

  /s/ Mirah Curzer
Mirah Curzer (PHV08047)
655 Third Avenue, 22nd Floor
New York, New York, 10017
Telephone: (212) 370-0330
Facsimile: (212) 370-0391
mcurzer@pkbllp.com