```
                                              Pages 1033 - 1043

                  UNITED STATES DISTRICT COURT

                NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Charles R. Breyer, Judge

UNITED STATES OF AMERICA,      )
                               )
           Plaintiff,          )
                               )
   VS.                         )    NO. CR 18-00021 CRB
                               )
ROBERT BOGUCKI,                )
                               )
           Defendant.          )
                               )


                               San Francisco, California
                               Monday, March 4, 2019

                  TRANSCRIPT OF PROCEEDINGS


APPEARANCES:

For Plaintiff:
                    UNITED STATES DEPARTMENT OF JUSTICE
                    Criminal Division
                    1400 New York Avenue N.W.
                    Washington, D.C. 20005
              BY:   BRIAN R. YOUNG
                    ASSISTANT UNITED STATES ATTORNEY

                    UNITED STATES DEPARTMENT OF JUSTICE
                    Fraud Section
                    1400 New York Avenue N.W.
                    Washington, D.C. 20005
              BY:   JUSTIN D. WEITZ
                    ASSISTANT UNITED STATES ATTORNEY


             (APPEARANCES CONTINUED ON FOLLOWING PAGE)

REPORTED BY:  Ruth Levine Ekhaus, CSR No. 12219, RPR, RMR, RDR
              Official Reporter Pro Tempore
```

```
 1   APPEARANCES:  (CONTINUED)

 2   For Plaintiff:
                         DAVID L. ANDERSON
 3                       United States Attorney
                         450 Golden Gate Avenue
 4                       San Francisco, CA  94102
                   BY:   CHINYAHI C. CADET
 5                       ASSISTANT UNITED STATES ATTORNEY

 6

 7   For Defendant:
                         KAPLAN HECKER & FINK LLP
 8                       Empire State Building
                         350 Fifth Avenue, Suite 7110
 9                       New York, NY 10118
                   BY:   SEAN HECKER, ESQ.
10                       ALEXANDRA K. CONLON, ESQ.
                         ABRA METZ-DWORKIN, ESQ.
11                       DEREK WIKSTROM, ESQ.

12                       CLARENCE DYER & COHEN LLP
                         899 Ellis Street
13                       San Francisco, CA 94109
                   BY:   ADAM F. SHEARER, ESQ.
14                       JOSH A. COHEN, ESQ.

15

16

17

18

19

20

21

22

23

24

25
```

```
 1  Monday, March 4, 2019                                    9:18 a.m.

 2                      P R O C E E D I N G S

 3                            ---o0o---

 4      (Proceedings were heard out of the presence of the jury.)

 5           THE COURT:  Let the record reflect that all parties

 6  are present.  The jury is not present.

 7        By the way, I have received the Government's submission,

 8  as well as the response by the Defense.

 9        I would like to make a statement in connection with the

10  Rule 29 motion.

11        As to Defendant Robert Bogucki's motion under Federal

12  Rules of Criminal Procedure 29, the Court now finds as follows:

13  The Government has presented two alternative theories of guilt

14  as to materiality, an essential element of the charged

15  offenses.  Even taking all assumptions in favor of the

16  Government, neither theory is sufficiently supported by the

17  evidence to permit a reasonable juror to reach a finding of

18  guilt beyond a reasonable doubt.

19        First, nothing in the record suggests that the mere fact

20  that Hewlett-Packard shared information with Barclays was such

21  to create a duty of trust and confidence, and no other evidence

22  supports this theory.

23        In contrast, the cases on which the Government relies, the

24  only written agreement governing this deal was the ISDA, which

25  expressly stated that each party acted as a principal and not
```

1   as agent, or in another capacity, fiduciary or otherwise.
2        Moreover, Zac Nesper testified that he understood part of
3   what Defendant told him to be posturing, and that he was
4   bluffing and BS-ing Barclays.  The only possible understanding
5   of Mr. Nesper's testimony is HP did not expect Barclays to be
6   entirely forthright and honest in their dealings because the
7   two companies were arm's length principals pursuing their own
8   benefit.  Thus, no reasonable jury could conclude that Barclays
9   or Defendant had acquired a duty of trust of confidence with
10  HP.
11       So too with the Government's second theory, the Government
12  has offered no evidence and indeed no explanation of how or why
13  someone in HP's position would be objectively capable of being
14  influenced by the allegedly false representations and
15  half-truths Defendant provided to HP.
16       There was no expectation of full disclosure between the
17  parties, as evidenced by Nesper's own lies to Barclays; his
18  disbelief as to portions of what Barclays told him; and the
19  terms of the ISDA.  Indeed, Nesper never even asked Barclays
20  what its position was during any point in the unwind, nor
21  attempted to impose any limit on how Barclays could position
22  itself during this period, even though Nesper was aware that
23  Barclays was a market-maker and that it was engaged in
24  pre-positioning as part of its business practice.
25       In light of the relationship between the parties, the

1  agreement governing the interactions, industry practice, HP's
2  own dishonesty, and Nesper's expectation as to Barclays' level
3  of honesty, no reasonable jury could conclude beyond a
4  reasonable doubt that the statements the Government has
5  identified as false statements, misrepresentations, and
6  half-truths were objectively capable of influencing HP to part
7  with money or property.
8      The Court, therefore, concludes that pursuant to Federal
9  Rules of Criminal Procedure 29, no reasonable jury could find
10 that the defendant, Robert Bogucki, made material, false, or
11 fraudulent pretenses, representations, or promises, nor engaged
12 in a conspiracy to do so.
13     The Court thus grants defendant's motion for acquittal as
14 to all counts.  An order more fully explaining the Court's
15 reasons will be published immediately.
16     I have two other comments I would like to make:  First, as
17 I'm sure some of you are aware, I have been a judge for more
18 than 20 years and, as such, I have had, I'm sure, more than 100
19 jury trials, in which almost all of them Rule 29 motions have
20 been granted.
21     This is the first time I have ever granted a motion under
22 Rule 29 as to the entirety of the case.  I have done it on
23 respective counts, but not as to the case in its entirety.
24 Thus, I approach that motion with, I think, some reverence and
25 care and caution, and absolute conservatism in connection with

1  whether or not it should be granted, because I, along with all
2  of you, believe strongly in the jury system, and believe that
3  guilt or innocence of an individual should ultimately be
4  decided by a jury.
5      Nevertheless, Congress, the law, and common sense imposes
6  a duty on a judge to look at the evidence at the end of the
7  Government's case and make a determination whether a reasonable
8  juror could come to the conclusion that the defendant is guilty
9  of the charge.  That is a solemn duty and it's a check and
10 balance, basically, on the Government's absolute right to bring
11 charges against a defendant, notwithstanding any judicial
12 review.  It is the first time, essentially, that a court
13 exercises review of the Government's decision.  That role is
14 given to an independent judiciary, not to the Executive Branch
15 of the Government.
16     So it is with care, caution, and deliberation -- I spent
17 three days thinking about this, aided by briefs filed by the
18 parties, reviewing the evidence.  And I think that you will see
19 in the opinion I'm about to hand you that there has been
20 careful consideration of all the evidence, giving the weight,
21 the deference to the Government, not making any determinations
22 as to credibility, not drawing any inferences adverse to the
23 Government, but simply looking with, I hope, an impartial eye
24 to the evidence submitted.
25     I would say one other thing that is sort of by the by, but

1  it does simply reflect this prosecution.  I think the
2  Government completely overreached in this case by charging this
3  defendant with a violation of the law in connection with the
4  FX options.
5      It is an unregulated business.  It was -- in this case, it
6  was entered into between two highly sophisticated individuals,
7  both of whom knew what the business was about; how it was
8  operating; how it was -- how it was addressed in the commercial
9  context; and it was eyes wide open.
10     Now, if the Government feels -- or if Congress feels, but
11 first I think it would be the Executive Branch -- that this is
12 an industry that should be regulated, and should be subject to
13 the same types of regulations that govern securities
14 transactions -- which I would point out, again, it is not --
15 then they have the right and indeed, perhaps, they see it as a
16 duty to go to the Congress of the United States and promulgate
17 legislation which would entitle them to set forth a set of
18 regulations governing the trading of foreign currency options,
19 not unlike trading of regular securities.
20     It is wrong, however, and where I find fault with the
21 Government, that they should assume the role of nanny of the
22 FX options market.  We're not here -- neither the Government,
23 in its prosecutions, nor the Court -- to try to create a web of
24 procedures and policies that -- from, perhaps, a moral or an
25 ethical system -- makes some sense.

1     It is not up to the Congress and it is not up to the
2 Executive -- it's not up to the Courts and not up to the
3 Executive Branch to create laws.  It is up to the Congress of
4 the United States because they represent the People of the
5 United States.
6     So, fundamentally, I think the decision of the Government
7 to proceed in this manner was flawed.  And it was at the
8 expense of the defendant.
9     Finally, I would say this:  The process that the Court
10 observed was, I thought, fair, professional, aboveboard.  I
11 have no-fault with these Government counsel.  I think they did
12 an outstanding job.  They presented their views of the case.
13 While I could disagree with that, I never saw anything that
14 suggested to me it was underhanded or less than professional;
15 to the contrary, Counsel from the DOJ, I thought, represented
16 the justice system admirably.  They are always welcome back in
17 this Court.
18     They got along with the other side.  The other side seemed
19 to get along with them.  And they acted -- even though a lot
20 was at stake from their point of view, they acted
21 professionally and in the highest tradition of the Justice
22 Department.  So the fact that they lost this case, should not
23 be viewed as a reflection on their ability, or integrity, or
24 professionalism.  I thought all were outstanding and I'm -- I
25 would commend them for that.

1  But, of course, in the final analysis, I have to make a
2  decision.  I have made my decision, and I wanted to thank
3  parties from all sides.  I enter judgments of acquittal as to
4  the defendant.  And I'm now going to bring in the jury and
5  discharge them.
6  (Proceedings were heard in the presence of the jury.)
7  **THE COURT:**  Okay.  Please be seated.
8  Good morning, ladies and gentlemen of the jury.  Let the
9  record reflect that all are present.  Parties are present and
10  the jury is present.
11  Ladies and gentlemen of the jury, during the last
12  three days, Friday, Saturday and Sunday, I have been
13  contemplating a motion that was made by the Defense, which is
14  called Entry for Judgment of Acquittal.
15  The law permits -- as a matter of fact, it requires -- a
16  judge at the end of the case submitted by the Government, the
17  end of their evidence, to consider whether or not a reasonable
18  jury could convict the defendant.
19  It is my view, after reviewing all the evidence, that it
20  could not; and for that reason, I have entered a judgment of
21  acquittal, thereby completing your task.
22  Even though your task contemplated further days and
23  deliberations, in a sense, I deliberated with myself and came
24  to this conclusion.
25  Now, in doing so, I did want to note a couple -- one thing

1  in particular.  My decision to enter a judgment of acquittal
2  should not be viewed by you as a reprimand of the manner in
3  which the Government presented its case.  I thought that
4  counsel for the Government presented its case in a thoroughly
5  professional manner, and they exercised their judgment and
6  their presentation admirably.  And, as I told them just a few
7  minutes ago, they will always be welcome back in this
8  courtroom.
9       What happens, though, in life -- and court some of the
10 times reflects life -- is that people have different views of
11 facts, and at different times.  It's a changing view, but you
12 could have a particular view.
13      The fact of the matter is, a judge, and a jury, from time
14 to time has to make a decision.  That's our job.  And it's not
15 made in a way as a criticism.  It simply states, based upon
16 what I have seen, what you have presented, this is my verdict.
17      And so, I want to thank you, all of you, for your jury
18 service.  I want to thank the parties, the Government and, of
19 course, the Defense for their outstanding job.
20      It seemed to me that the Defense was able, through
21 cross-examination, to do exactly what cross-examination is
22 intended to do, to bring out the other side and to put the
23 evidence in a perspective.  That's what cross-examination is
24 about.
25      And there are a lot of ways to do it.  Lots of clever

1  ways, not so clever ways, but the goal of examination, the goal
2  of examination is to try to achieve the truth.  The truth of
3  the matter.  What does it really mean?  What really happened?
4  What is really understood by it?
5      And that's the role of the Defense, and they did an
6  excellent job in doing so.
7      So with that, you get not only the rest of the day off,
8  you get the rest of the week off.  Sorry the weather is not
9  going to cooperate.  It doesn't seem to be.
10     But, if you will now go back into the jury room, I'll come
11 back and talk to you for a moment before you're finally sent on
12 your way.
13     But, again, the gratitude of the parties and the gratitude
14 of the Court.  Thank you very much.  You're free to discuss the
15 case, or not, as you so choose.
16     (Proceedings were heard out of the presence of the jury.)
17         **THE COURT:**  So that brings it to a conclusion.  Is
18 there anything else that I can address?  I don't think so.
19     All right.  There will be -- you'll have the opinion right
20 now.  Thank you.
21         **ALL:**  Thank you, Your Honor.
22             (Proceedings adjourned at 9:35 a.m.)
23                     ---o0o---
24
25

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:    Monday, March 4, 2019

_____

Ruth Levine Ekhaus, CSR No. 12219, RPR, RMR, RDR
Official Reporter Pro Tempore, U.S. District Court