UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 15-cr-00155 (RNC) |
| | : | |
| ROSS SHAPIRO and | : | January 6, 2020 |
| MICHAEL GRAMINS | : | |

**ROSS SHAPIRO'S REPLY TO GOVERNMENT'S
SUPPLEMENTAL OPPOSITION TO DEFENDANTS' MOTIONS
<u>FOR RECONSIDERATION PURSUANT TO LOCAL RULE 7(c)</u>**

PETRILLO KLEIN & BOXER LLP
655 Third Avenue, 22nd Floor
New York, New York 10017
Telephone: (212) 370-0330
*Attorneys for Ross Shapiro*

Defendant Ross Shapiro respectfully submits this reply memorandum of law in response to the government's supplemental opposition to the defendants' motions for reconsideration of the Court's Ruling and Order dated June 5, 2018 ("Order"). The government argues, incorrectly, that two recent Second Circuit opinions, *United States v. Gramins*, 939 F.3d 429 (2d Cir. 2019), and *United States v. Johnson*, -- F.3d --, No. 18-1503-cr, 2019 WL 6834021 (2d Cir. Dec. 16, 2019), are dispositive of Mr. Shapiro's motions for reconsideration and dismissal of the Indictment on grounds that he lacked fair notice under the Due Process Clause that his conduct was illegal. To the contrary, these cases only serve further to lay bare the fundamental nature of the due process violation engendered by this prosecution.

As the government notes, the *Gramins* Court held "that testimony of counterparties 'can constitute sufficient evidence of materiality to support a conviction for securities fraud.'" Gov. Supp. at 4 (quoting *Gramins* at 447).[1] But far from "directly refut[ing] the idea that the defendants could not have known that their conduct constituted securities fraud," *id.*, *Gramins* implies precisely the contrary. In holding that statements made by sophisticated counterparties, in bilateral, principal-to-principal negotiations can be material and therefore unlawful, the *Gramins* Court reached a conclusion opposite to the one drawn by the Seventh Circuit Court of Appeals in *United States v. Weimert*, 819 F.3d 351 (7th Cir. 2016). *Weimert* holds, in flat contradiction to *Gramins*, that under the wire fraud statute, statements in bilateral, principal-to-principal price negotiations between sophisticated parties *cannot* be material as a matter of law and are therefore *not* unlawful. *Id.* at 354, 357-58, 370; *see also* Memorandum of Law in Support of Defendants' Motion to Dismiss the Indictment on Due Process Grounds (Dkt. 400) at 2-3. If federal appeals court judges cannot agree on whether misrepresentations in bilateral price

---

[1] "Gov. Supp." refers to the Government's Supplemental Opposition to Defendants' Motions for Reconsideration (Dkt. 542), filed December 19, 2019.

1

negotiations can be material, and therefore unlawful, then Mr. Shapiro certainly "could not have known that [his] conduct" constituted the making of material misstatements, especially under the more stringent standard of materiality encoded in the securities laws.[2] Importantly, the absence of fair notice to Mr. Shapiro that his conduct was illegal is underscored by the fact that, prior to *Litvak*, no criminal enforcement authority had ever charged violations of law arising from bilateral price negotiations between sophisticated parties, each armed with the same information about the product subject to the price negotiations. It is further underscored where, as here, the "materiality question" was "hotly contested at trial" and "inherently difficult," and the government failed to prove that Mr. Shapiro, who did not engage in the alleged conduct after the *Litvak* Indictment, had criminal intent. *Gramins*, 939 F.3d at 455 (noting that, in contrast to Gramins, "no similarly strong mens rea evidence was present for [Mr. Shapiro]").[3]

*United States v. Johnson* detracts further from the government's position. In *Johnson*, the Second Circuit rejected a currency trader's fair notice arguments and found that misrepresentations about the manner in which the trader and others intended to conduct a currency exchange during a specified two-hour window leading to a "fixing transaction" were material and reflected an intent to harm under the wire fraud statute. 2019 WL 6834021 at *1,

---

[2] *Compare United States v. Vilar*, 729 F.3d 62, 89 (2d Cir. 2013) (proof of materiality in a securities fraud case requires a showing of "a *substantial likelihood* that a reasonable investor would find the omission or misrepresentation *important* in making an investment decision") (emphasis added), *with United States v. Rybicki*, 354 F.3d 124, 147 (2d Cir. 2003) (en banc) (the standard for materiality in wire and mail fraud requires only that the misrepresentations or omissions must have "*ha[d] the natural tendency to influence or [were] capable of influencing* the [victim] to change its behavior") (emphasis added).

[3] The Circuit's comments regarding the lack of evidence of Mr. Shapiro's criminal intent echo the points set forth in our Motion to Dismiss: **No** Nomura-associated witness in this case has testified that he thought his non-agency RMBS price negotiation tactics were unlawful at the time of his conduct. **No** confession is in evidence. **No** admission of wrongdoing by any Defendant is in evidence. *See* Memorandum of Law in Support of Defendants' Motion to Dismiss the Indictment on Due Process Grounds (Dkt. 400) at 1.

5.[4]  The defendant, Mark Johnson, former global head of the foreign exchange trading desk at the investment bank HSBC, had assured HSBC's client, Cairn Energy, that HSBC could effect a currency exchange of up to four billion U.S. dollars (USD) for British pounds (GBP) ("FX Transaction") without creating excessive market volatility.  *Id.* at *1.  Specifically, Johnson and HSBC represented to Cairn that HSBC would accumulate pounds during the two hour period prior to the fixing transaction but that HSBC would earn only a "small amount of money," that Cairn would receive a "fair price," and that HSBC would not trade in a manner designed to "ramp up" the price of GBP at the time of the fix.  *Id.* at *2.

Contrary to their representations, however, Johnson and HSBC traded aggressively in a manner tending to "drive up the price" of GBP in the two hours leading up to the fix.  *Id.* Accordingly, the Court held there was sufficient evidence that Johnson's misrepresentation that HSBC would not "ramp up" the price of GBP was material and reflected an intent to harm.  *Id.* at *5.  In rejecting Johnson's arguments that he lacked fair notice that his conduct was illegal because there was no specific bar to trading in advance of the fix (also referred to as "frontrunning") and no governing standard defining "when a fixing transaction becomes criminal," the Court explained that Johnson was not convicted of frontrunning, but of "making material misrepresentations to Cairn about *how* HSBC would trade ahead of the fix and the price would be determined."  *Id.* at *6 (emphasis in original).  The Court concluded that "a defendant who executes a fixing transaction engages in criminal fraud if he intentionally misrepresents to the victim how he will trade ahead of the fix, *thereby deceiving the victim as to how the price of the transaction will be determined*."  *Id.* (emphasis added).

---

[4] The "Fixing Transaction" involved exchanging GBP for USD at an hourly exchange rate that the company WM/Reuters published.

3

The government erroneously argues that *Johnson's* reasoning forecloses Shapiro's due process motion because Shapiro, like Johnson, made misrepresentations "about an essential element of the bargain – price." Gov. Supp. at 4-5. This argument fails to appreciate the critical distinction between this case, in which all parties agreed upon the price of each transaction in advance of its consummation (and thus could not have been deceived about how the price of each transaction would be determined because they had directly negotiated the specific transaction prices in advance of their consummation) and *Johnson*, where the parties had *not* agreed upon the price of the transaction, and where price was affected adversely by the defendant's unilateral trading leading into the fix. The *Johnson* court's reasoning that HSBC's promise not to "ramp up" the price of the transaction deceived Cairn about "the price of the FX Transaction," and thus constituted a material and essential element of the bargain, is inapposite here, where Nomura's counterparties expressly agreed upon *the exact prices at which the bonds would trade* in advance of consummating the bond trades (and thus could not have been deceived about "the [already agreed-upon] price[s] of the [transactions]."). In other words, under *Johnson* the defendant had fair notice that the proscribed conduct was criminal because the defendant's misrepresentations deceived HSBC's counterparty about the actual price the counterparty would have to pay for the FX Transaction, which the counterparty learned about only after the fact. By contrast, Nomura's counterparties were misled only about Nomura's profit; they were *not* deceived about the prices at which their bonds traded – prices that they themselves directly negotiated, and agreed to, in advance of executing each trade.

*United States v. Bank of New York Mellon*, 941 F.Supp.2d 438 (S.D.N.Y. 2013), a civil wire fraud case under the FIRREA statute, illuminates this point. In *Mellon*, Judge Kaplan explained the crucial distinction the government ignores in its brief – namely, the difference

4

between misrepresentations about the "price" at which *a transaction is or will ultimately be consummated* (which are material) and misrepresentations about the "price" at which a defendant can acquire or resell a product that is the subject of the directly negotiated transaction in question. The latter deceive counterparties only with respect to the defendant's *profit*, not the transaction price, and thus are *not* material. See *id.* at 474.

*Mellon* involved the "standing instruction service" through which Bank of New York Mellon ("BNYM") provided currency exchange ("FX") to clients, without transaction-by-transaction agreements, as the need arose. While clients of the bank could choose to contact the bank directly and execute an FX transaction at a negotiated and agreed-upon price, the bank's standing instruction service permitted clients instead to authorize the bank to provide FX services automatically without first obtaining the client's agreement on price. *Id.* at 444. In connection with its standing instruction service the bank made various representations about how it would conduct such FX transactions including representing that clients would receive "best execution." *Id.* at 445-46. Judge Kaplan ruled on a motion to dismiss that the government had sufficiently alleged material misstatements and intent to harm based, in part, on allegations that the bank did not, in fact, provide best execution as promised. *Id.* at 465.

In rejecting the defendants' arguments that the plaintiffs had received the goods or services they expected, Judge Kaplan explained that such an argument "would have more force" had the bank "engaged a customer in a directly negotiated transaction and quoted a [specific] price." *Id.* at 474 (explaining in *dictum* that in such circumstances the "essence of the bargain would be the exchange of currencies at the agreed-upon price" even if the defendant falsely represented that this was the "best available price" or that it was "making no profit at that price" when in fact it "made a significant profit" because a "customer generally has no interest in what

5

profits the [defendant] actually made so long as it received what was agreed"). By contrast, in connection with the bank's standard instruction service, "the nature of the bargain is much different" because "the price was decided unilaterally by BNYM and learned by the customer only after the fact." *Id.*

The circumstances in *Johnson* are squarely analogous to those involving BNYM's standing instruction service and provide no support for the government's argument. The prices of the relevant transactions in *Johnson* and *Mellon* were decided "unilaterally by" the defendants "and learned by the customer only after the fact." *Mellon*, 941 F.Supp.2d at 474. Consequently, the defendants' misrepresentations about how they intended to conduct the trading in question in those cases deceived the counterparties about *the actual prices they would pay in connection with these transactions*, and therefore constituted an essential element of the bargain struck between the parties. But unlike *Mellon* and *Johnson*, the Nomura traders did *not* unilaterally determine the prices of the relevant transactions. Indeed, the counterparties to each Nomura trade specifically agreed to the exact price of each such trade *in advance* of consummating the trade. Consequently, "the nature of the bargain [here] is much different," *Mellon*, 941 F.Supp.2d at 474, and the defendants' alleged misrepresentations misstated only the prices at which Nomura was able to purchase the bonds from, or sell the bonds to, *other parties* (and did not misrepresent to any counterparty the price that counterparty would pay or receive in connection with any particular trade). In other words, the alleged misrepresentations about "price" made by the Nomura defendants constituted misrepresentations about the "profits the [defendants] actually made" in which "a customer generally has no interest." *Id.* Thus, the government's attempt to conflate this type of "price" misrepresentation (which relates only to Nomura's profit) with those

6

made in *Johnson* (which relate to the actual price the counterparty ultimately paid HSBC) lacks merit.[5]

Accordingly, far from undermining Mr. Shapiro's due process claim, *Johnson* vindicates it.  By holding that a defendant has fair notice that making misrepresentations that would "deceiv[e] the victim as to *how the price of the transaction will be determined*," where such price is determined *unilaterally* by the defendant and learned by the customer only after the fact (such as in connection with "a fixing"), constitutes "criminal fraud," 2019 WL 6834021 at *5, *Johnson* supports Judge Kaplan's *dictum* in *Mellon* that "price" misrepresentations relating to a defendant's profit in *directly negotiated* transactions, in which the relevant parties *agree on price in advance* of consummating the transactions and which, therefore do *not* "deceive the victim as to how the price of the transaction will be determined" do *not* constitute "criminal fraud." *Mellon*, 941 F.Supp.2d at 474.  Accordingly, *Johnson* echoes the due process concerns raised by *Weimert*.  The Court's observation in *Gramins* as to the lack of evidence of Mr. Shapiro's criminal intent, further deepens these concerns.

\* \* \*

For the reasons set forth above, and those advanced in prior briefing, the Court should reconsider its ruling and enter a judgment of acquittal on Count One of the Indictment as to Mr.

---

[5] Indeed it is simply not possible to deceive a counterparty in a directly negotiated transaction about the price the counterparty will pay or receive because the counterparty is directly negotiating, and is thus entirely aware, of the exact price at which the transaction will occur, in advance of its consummation.

Shapiro or, alternatively, dismiss the Indictment as a violation of Mr. Shapiro's Fifth Amendment right to due process.

                                      Respectfully submitted,

                                      PETRILLO KLEIN & BOXER LLP

                           By: /s/ Guy Petrillo
                                    Guy Petrillo (CT19924)
                                    Joshua Klein (PHV07748)
                                    Amy Lester (PHV08919)
                                    655 Third Avenue, 22nd Floor
                                    New York, New York 10017
                                    Telephone: (212) 370-0330
                                    Facsimile: (315) 873-2015
                                    *Attorneys for Ross Shapiro*

**CERTIFICATION OF SERVICE**

I hereby certify that on January 6, 2020, a copy of the foregoing Ross Shapiro's Reply to Government's Supplemental Opposition to Defendants' Motions for Reconsideration Pursuant to Local Rule 7(c) was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: New York, New York
January 6, 2020

     /s/ Leonid Sandlar
Leonid Sandlar (PHV07700)
655 Third Avenue, 22nd Floor
New York, New York, 10017
Telephone: (212) 370-0330
Facsimile:  (315) 873-2015
lsandlar@pkbllp.com